15

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FILED
FEB 23 2010
CLERK'S OFFICE
DETROIT

DASSAULT SYSTEMES, S. A.
A CORPORATION OF FRANCE

Plaintiff,

v.

CASE NO. 09-CV-10534
HON. LAWRENCE P. ZATKOFF

KEITH CHILDRESS
d/b/a PRACTICAL CATIA TRAINING

Defendant,
_________________________________/

**DEFENDANT CHILDRESS' RESPONSE IN OPPOSITION TO DASSAULT'S MOTION [DN 51] FOR AN EXTENSION OF TIME TO RESPOND TO DEFENDANT CHILDRESS' RECENT PLEADINGS [DN 49 & DN 50]**

On December 7, 2009, this court granted Plaintiff's ("Dassault") Motion for Entry of Default Judgment [DN 40] and ordered Dassault to file its list of damages, which it did on December 21, 2009 [DN 42]. On January 25, 2010 I filed a Motion to Set Aside the Order Granting Entry of Default Judgment [DN 49] and on January 28, 2010 I filed my response to Dassault's List of Damages [DN 50].

Dassault's Reply to my Response to its List of Damages was due to be filed by Monday February 8, 2010 and its Response to my Motion to Set Aside the Order Granting Default Judgment was due to be filed by Thursday February 11, 2010. Dassault's counsel contacted me via email on Monday February 8, 2010 and asked that I consent to allowing them an additional three weeks to respond to my pleadings. I declined Dassault's request because I believe it was completely unnecessary. Dassault has now filed a Motion [DN 51] requesting a three week extension of time to respond to my pleadings, which I oppose for the reasons contained herein.

Dassault premises its motion for an extension of time to respond to my pleadings because it says that I have presented "new evidence" of which Dassault was previously unaware. This is not true.

On November 4, 2008, Glenn Forbis, the managing partner of Rader, Fishman & Grauer, the law firm representing Dassault, sent an email to my former attorney **(Exhibit A)** regarding this matter. My former attorney forwarded the email to me and I immediately responded to Mr. Forbis' email informing him that I was no longer represented by my former attorney **(Exhibit B)**, and asked that he contact me directly. Mr. Forbis sent an email reply asking that I phone him the following day, which I did and left a message. When Mr. Forbis did not return my call, I sent a follow-up email on November 6, 2008 **(Exhibit C)**. Mr. Forbis phoned me from his cell phone (248 568 0232) on Friday November 7, 2008 at 9:01 AM and we had a 24 minute conversation **(Exhibit D)**.

During our conversation I provided Mr. Forbis with a brief history of our company's (Practical Catia Training) relationship with IBM and Dassault including the business agreements dating back to 2001 between our company and IBM, Dassault, and MSC Software. I informed Mr. Forbis that we have owned the CATIA V5 software since 2001 and that Dassault has been advertising on our website since 2004, at Dassault's request. I also told Mr. Forbis that I could not afford an attorney and would be forced to represent myself should Dassault chose to sue me.

Mr. Forbis said this was obviously a big misunderstanding and asked if I would be willing to participate in a conference call with Dassault to straighten the matter out. I agreed. Mr. Forbis did not arrange the conference call, as he suggested. Instead, on February 12, 2009, Mr. Forbis' law firm filed its copyright and trademark infringement suit on behalf of Dassault Systemes.

After learning Dassault had filed suit against me, I immediately phoned Mr. Forbis **(Exhibit**

E), whose name appears on the complaint, to try and straighten this matter out before it went any further. Mr. Forbis was not in so I left a detailed message inquiring as to why he hadn't arranged the conference call, as he said he would do. I asked that he return my call so we could discuss this matter further. Mr. Forbis did not return my call and I have never heard from him again.

While Dassault claims the documents and affidavits in support of my recent pleadings are "new" to Dassault, the information contained therein is not. As stated above, I shared this information with Mr. Forbis during our phone conversation nearly 15 months ago. As such, Dassault has had ample time to investigate and verify this information. Furthermore, I raised these same issues in my Motion for Reconsideration that I filed on December 22, 2009 [DN 46]. For Dassault to now claim that this is all new information to them and that, as a result, it requires an additional three weeks to respond is disingenuous and a waste of this Court's time.

Even if Dassault was not already aware of the information I provided in support of my Motion to Set Aside Order Granting Plaintiff's Motion for Entry of Default Judgment [DN49], they should not require a three week extension of time to formulate a response to said motion. According to Sixth Circuit precedent, when evaluating a motion to set aside an entry of default, the court should consider three factors[1]:

(1) Whether the defendant has a meritorious defense;
(2) Whether culpable conduct of the defendant led to the default;
(3) Whether the plaintiff will be prejudiced.

With regards to meritorious defense, the court states that the test of meritoriousness is not "likelihood of success, but merely whether the claim or defense is 'good at law'." *United States of America v Thomas Battle*, supra, citing *United Coin Meter Company v Seaboard Coastal Line Railroad*, 705 F2d 839 (6th Cir 1983)

1 *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 844-45 (6th Cir. 1989)

In my Motion to Set Aside Entry of Default Judgment, I list the following "meritorious defenses" to Dassault's claims: Express and Implicit Licenses, Fair Use, Copyright Estoppel, Statute of Limitations, Trademark Estoppel, Laches, and Acquiescence. Inasmuch as the test of meritoriousness is not "likelihood of success", but merely whether the claim or defense is "good at law", Dassault's only challenge to my "meritorious defenses" would be whether they are "good at law". Inasmuch as each of the "meritorious defenses" I have listed are viable and recognized defenses to allegations of copyright and trademark infringement in the Sixth Circuit, Dassault can pose no challenge to said meritorious defenses. Therefore, the "meritorious defense" section of my Motion to Set Aside Entry of Default Judgment should not give Dassault cause to require a three week extension of time to file a response.

With regards to the "culpability" section of my Motion to Set Aside Entry of Default Judgment, nothing in said motion was "new" information with regards to my lack of culpability. These were the same issues I have raised in several previous pleadings dating back to July 29, 2009 [see DN 23, DN 25, DN 30, and DN 46]. Inasmuch as my Motion to Set Aside Entry of Default Judgment does not raise any new issues with regards to culpability, and inasmuch as Dassault has been aware of said issues with regards to culpability and has addressed these issues in its previous pleadings, the "culpability" section of my Motion to Set Aside Entry of Default Judgment should not give Dassault cause to require a three week extension of time to file a response.

With regards to the "prejudice to Plaintiff" section of my Motion to Set Aside Entry of Default Judgment: when Dassault filed its Motion for Entry of Default Judgment and its Reply to my Response to its Motion for Entry of Default Judgment, it did not state any prejudice it would suffer should the court deny its motion. Therefore, it follows that Dassault would not suffer any

prejudice should the court set aside the order granting entry of default judgment. However, if Dassault now believes it would suffer prejudice should the court set aside its order granting entry of default judgment, the 14 days allotted for Dassault to filed a response to my motion would have been more than enough time for Dassault to pen a response that addresses the prejudice issue.

There is absolutely no viable reason why Dassault could not have filed a response to my Motion to Set Aside Entry of Default Judgment within the 14 day time period set forth by the Fed. R. of Civ P. Dassault's request for a three week extension of time to file a response to my Motion to Set Aside Entry of Default Judgment is completely unnecessary and should not be allowed.

Dassault claims in its Motion [DN 51] that it requires an additional three weeks to file a reply to my Response to its List of Damages because of what Dassault refers to as my "production and now reliance on never-before-seen documents and affidavits" and because it has not had "an opportunity to review any of this new evidence or cross examine any of these newly-identified affiants." Again, the information contained in the documents and affidavits in support of my recent pleadings is not "new" information to Dassault.

Not only did I provide said information to Dassault's counsel, Mr. Forbis, nearly 15 months ago, but my response to Dassault's list of damages and supporting documentation contains information that is either already in Dassault's possession and/or information that Dassault could have easily discovered for itself had it exercised the bare minimum amount of due diligence in investigating this matter prior to filing its complaint with the FBI and prior to filing its lawsuit.

Dassault's damages brief alleges that I have been "posing as a CATIA Certified Professional." Had Dassault's investigator, Andrew Clarkson, checked with Dassault's department

in charge of Global Certification testing, he would have discovered that I took and passed the test in March of 2003, and therefore earned the title of "CATIA Certified Professional." This information should not have come as a surprise to Dassault nor should Dassault require additional time to respond.

Dassault alleges in its damages brief that our company has been "utilizing the CATIA trademark to misrepresent an affiliation with Plaintiff and to profit from Plaintiff's goodwill". Had Mr. Clarkson checked with the department at Dassault whose banner ads appear on our website, he would have discovered that Dassault approached us in 2004 with a request to display its banner ads on our website and that any affiliation between Dassault and our company was created by Dassault, not by our company. This information was readily available to Dassault and Dassault should not require an additional three weeks to proffer a response.

Dassault alleges in its damages brief that "Defendants do not have a license to use CATIA" and that "...Defendants continue today to teach classes using CATIA; Defendants continue without a license" and "Defendants do not have a license to use CATIA on any computers at any location." Had Mr. Clarkson contacted Dassault's partner IBM, he would have discovered that we purchased the CATIA V5 software in 2001 and have paid the Annual License Charge (ALC) every year ever since. We are therefore entitled to use the CATIA V5 software in our training. Again, this information was readily available to Dassault. It is not "new evidence" and should not require an additional three weeks for Dassault to respond.

Dassault alleges in its damages brief that "...Defendants have been using illegal copies of CATIA since at least 2000." Had Dassault maintained proper communications with its partner IBM, Dassault would have known that IBM provided our company and our students with the "hobbled code" CATIA V5 software in 2001 as a means of promoting IBM/Dassault's new

CATIA V5 software. Had Dassault maintained proper communications with MSC Software, an IBM Business Partner, licensed CATIA Reseller, and a company of which Dassault owns a 10% share, Dassault would have known that our company had been using the CATIA V5 software in our training since 2001 with MSC Software's full knowledge and consent in exchange for MSC Software advertising on our website and for our providing sales leads to MSC Software. This should not have come as news to Dassault nor should it require an additional three weeks for Dassault to respond.

Had Dassault not been negligent in its communications with its partners IBM and MSC Software, and had Mr. Clarkson, Dassault's "World Wide Anti-Piracy and Compliance Program Manager", conducted a proper investigation into this matter prior to Dassault filing its complaint with the FBI, the FBI raid and grand jury investigation could have been avoided, my company and reputation would not have been decimated, my family and I could have been spared the tremendous emotional and financial toll this has taken on all of us over the past three and a half years, and this lawsuit could have been avoided.

Dassault blames me for its lack of knowledge about what has transpired within its own company, and within its family of companies, by once again accusing me of "thwart[ing] discovery every step of the way in this case." This is just another false accusation cast upon me by Dassault to cover its own oversights.

When Dassault served a subpoena on the FBI in early March 2009 without informing me (a Rule 45(b)(1) violation), the FBI/DOJ refused to honor the subpoena because Dassault had not followed the proper procedures in serving its subpoena. When Dassault served another subpoena on the FBI in April 2009, in violation of Rule 26(d)(1) of the Fed. R. of Civ. P., I filed a motion to quash and Dassault withdrew the subpoena. When Dassault filed a motion for expedited

discovery to serve a subpoena on the FBI, which this court granted, the FBI refused to honor the subpoena because of Rule 6(e)(2) concerns, not because the time was "inconvenient," as Dassault misrepresented to this Court in a subsequent pleading.

Dassault has accused me several times of blocking discovery by refusing to participate in a Rule 26(f) conference. This is also not true. In April of 2009, Dassault asked me to participate in an impromptu Rule 26 conference by phone so they could serve a subpoena on the FBI without having to file a motion for expedited discovery. I refused Dassault's request because I had filed a Rule 12(e) Motion for a More Definite Statement and Request for Hearing to present evidence of Rule 6(e)(2) violations to the court. Rule 12(e) prevented me from filing an answer to Dassault's complaint and from filing my counterclaims and cross-claims until the court had ruled on my Rule 12(e) motion. Rule 26(f) states that: "the parties must confer as soon as practicable." As a *pro se* litigant, it did not seem "practicable" to me to conduct a spur-of-the-moment Rule 26(f) conference, thus triggering discovery, before I had an opportunity to file an answer to Dassault's complaint, before I filed my counterclaims and cross-claims, and before the court had ruled on the Rule 6(e)(2) issues I had raised.

Instead of harping on this for the past year, Dassault could have sought a court order to compel my participation in a Rule 26(f) conference, but Dassault has chosen not to do so. This would indicate that Dassault has been less invested in seeking discovery than it has been in using my refusal to participate in its inappropriate Rule 26(f) conference nearly a year ago as an excuse to mask the fact it did not conducted a proper investigation into this matter before filing its complaint with the FBI or before filing its lawsuit.. At any rate, Dassault should not require discovery from me to know what has gone on within its own company, or to know the business agreements into which its partners IBM and MSC Software have entered.

In conclusion, Dassault's motion for a three week extension of time to respond to my pleadings is completely unnecessary, is a stall tactic, is a waste of this Court's valuable time, and should therefore not be allowed.

For the reasons contained herein, I respectfully request that this Honorable Court:

- Deny Dassault's motion for an extension of time and prohibit Dassault from filing a response to my Motion to Set Aside the Order Granting Entry of Default Judgment [DN 49], as the extension of time is completely unnecessary;
- Prohibit Dassault from filing a reply to my Response to its List of Damages [DN 50], as the extension of time is completely unnecessary and its motion for an extension of time was not filed with the time constraints set forth in the Fed. R. of Civ. P.;
- Decide the outstanding issues based on the pleadings already submitted by both parties.

Respectfully Submitted,

Keith Childress
2234 Elm St. Algonac, MI 48001
586 693 2585

**Subject:** Telephone Call Received Monday, 11/3/08
**From:** "Michael LAVOIE" <LAVOIE@butzel.com>
**Date:** Tue, 04 Nov 2008 09:30:02 -0500
**To:** "Keith Childress" <kchildress@comcast.net>

Ex. A

Keith: Here is a message I just received this morning from a lawyer who represents Dassault. Because I no longer represent you, I would have no intention to follow-up with this individual but I wanted to relay the fact that I had been contacted. If you have any questions about this, please contact me. Thanks. Mike

---

Hey Mike. Glen Forbes here from Rader Fishman & Grauer calling. We represent Dassault Systems and I understand that you have represented Mr. Childress in a matter opposite Dassault and I was calling to talk to you a little about that relating to the Practical CATIA training that Mr. Childress does. I would appreciate it if you would give me a call. My telephone number is 248-594-0636--248-594-0636 and its Glen Forbes from Rader Fishman & Grauer in Bloomfield Hills. I look forward to talking to you tomorrow on Tuesday. Thanks. Bye.

Michael J. Lavoie
Butzel Long
150 W. Jefferson, Suite 100
Detroit, MI 48226
lavoie@butzel.com
313-225-7060

"To comply with U.S. Treasury Regulations: This communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the tax laws of the United States, or promoting, marketing or recommending to another party any transaction or matter addressed in this communication (and any attachment).

Confidentiality Statement:
This message (including any attachments) is intended only for the individual or entity to which it is addressed. It may contain privileged, confidential information that is exempt from disclosure under applicable laws. If you are not the intended recipient, please note that you are strictly prohibited from disseminating or distributing this information (other than to the intended recipient) or copying this information. If you have received this communication in error, please notify us immediately by e-mail or by telephone at (313) 225-7000. To learn more about Butzel Long, please visit our website at http://www.butzel.com "

**To comply with U.S. Treasury Regulations:** This communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the tax laws of the United States, or promoting, marketing or recommending to another party any transaction or matter addressed in this communication (and any attachment).

**Confidentiality Statement:**

This message (including any attachments) is intended only for the individual or entity to which it is addressed. It may contain privileged, confidential information that is exempt from disclosure under applicable laws. If you are not the intended recipient, please note that you are strictly prohibited from disseminating or distributing this information (other than to the intended recipient) or copying this information. If you have received this communication in error, please notify us immediately by e-mail or by telephone at (313) 225-7000. To learn more about Butzel Long, please visit our website at http://www.butzel.com

Ex. B

**Keith**

**From:** Keith [keith@practicalcatia.com]
**Sent:** Tuesday, November 04, 2008 2:00 PM
**To:** 'gef@raderfishman.com'
**Subject:** Matter involving Dassault Systemes

Dear Mr. Forbis,

My name is Keith Childress of Practical CATIA Training. It is my understanding that you contacted Mike Lavoie yesterday regarding a matter involving Dassault Systemes. This is to inform you that I am no longer represented by Mr. Lavoie or by the law firm of Butzel Long.

You may direct any future correspondence regarding this matter to me at 2234 Elm St. Algonac MI 48001.

Sincerely,
Keith Childress
Practical CATIA Training

**Keith**

EX. C

**From:** Keith [keith@practicalcatia.com]
**Sent:** Thursday, November 06, 2008 9:00 AM
**To:** 'Glenn E. Forbis'
**Subject:** RE: Matter involving Dassault Systemes

Hi Glenn,

I phoned you at approximately 10 AM yesterday (Wednesday) and left a message on your voicemail. I didn't hear back from you so I thought I'd follow up with this email.

Cheers,
Keith

---

**From:** Glenn E. Forbis [mailto:gef@raderfishman.com]
**Sent:** Tuesday, November 04, 2008 6:07 PM
**To:** Keith
**Subject:** RE: Matter involving Dassault Systemes

Keith,
Thank you for your email. I would appreciate it if you would call me tomorrow to discuss this matter. I can be reached at the number below. Thank you.

RADER, FISHMAN & GRAUER PLLC

Glenn E. Forbis, Esq.
Rader, Fishman & Grauer PLLC
39533 Woodward Ave., Suite 140
Bloomfield Hills , Michigan 48304
248-594-0636 direct
248-594-0610 facsimile
gef@raderfishman.com

**CONFIDENTIAL AND PRIVILEGED INFORMATION IMPORTANT:** The enclosed message and any attachments are intended for the addressee c is privileged and confidential. If you are not the addressee, then please DO NOT read, copy or distribute it, but reply to the sender that you received error and delete it. Thank you.

---

**From:** Keith [mailto:keith@practicalcatia.com]
**Sent:** Tuesday, November 04, 2008 2:00 PM
**To:** Glenn E. Forbis
**Subject:** Matter involving Dassault Systemes

Dear Mr. Forbis,

My name is Keith Childress of Practical CATIA Training. It is my understanding that you contacted Mike Lavoie yesterday regarding a matter involving Dassault Systemes. This is to inform you that I am no longer represented by Mr. Lavoie or by the law firm of Butzel Long.

You may direct any future correspondence regarding this matter to me at 2234 Elm St. Algonac MI 48001.

Sincerely,
Keith Childress
Practical CATIA Training

No virus found in this incoming message.
Checked by AVG - http://www.avg.com

EX. D

Welcome - Keith Childress
Account Number: User Name:
Account Name: Keith Childress Account Status: Active

Dashboard Billing Voicemail Account Orders Features Add-ons

Advanced Activity Search Activity FAQs Help Contact Log Out

Your search for Incoming Calls from November 7, 2008 8:00 AM to November 7, 2008 2:00 AM returns **7** results.

Search Results

| Date | Time | From | To | Duration (hh:mm:ss) | Transaction ID |
|---|---|---|---|---|---|
| Nov 07, 2008 | 01:58 PM | ID 1810794[redacted] | 15866932585 | 00:01:00 | 19632553250 |
| Nov 07, 2008 | 01:57 PM | ID 1810794[redacted] | 15866932585 | 00:01:00 | 19632533778 |
| Nov 07, 2008 | 01:45 PM | ID 1604599[redacted] | 15866932585 | 00:01:00 | 19632261608 |
| Nov 07, 2008 | 12:56 PM | ID 1313595[redacted] | 15866932585 | 00:02:00 | 19631157380 |
| Nov 07, 2008 | 11:28 AM | ID Anonymous | 15866932585 | 00:02:00 | 19629116242 |
| Nov 07, 2008 | 09:51 AM | ID 1248496[redacted] | 15866932585 | 00:02:00 | 19627008878 |
| Nov 07, 2008 | 09:01 AM | ID 12485680232 | 15866932585 | 00:24:00 | 19626504821 |

ID Caller ID Companion Call F Forwarded Call Transferred Call

EX. D

EX. E

Total Usage Charges $42.00

View your bill and call details online for FREE. Sign in to My Verizon at www.verizonwireless.com.

# Detail for Keith D Childress: 810–278–1921

## Voice

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 2/13 | 10:52A | 248–[redacted] | Peak | PlanAllow | Algonac MI | Incoming CL | 4 | -- | -- | -- |
| 2/13 | 11:16A | 586–[redacted] | Peak | PlanAllow | Algonac MI | Roseville MI | 5 | -- | -- | -- |
| 2/13 | 11:25A | 248–[redacted] | Peak | PlanAllow | Algonac MI | Auburn Hts MI | 2 | -- | -- | -- |
| 2/13 | 11:26A | 931–[redacted] | Peak | PlanAllow | Algonac MI | Winchester TN | 5 | -- | -- | -- |
| 2/13 | 11:57A | 931–[redacted] | Peak | PlanAllow | Algonac MI | Winchester TN | 2 | -- | -- | -- |
| 2/13 | 12:22P | 931–[redacted] | Peak | PlanAllow | Algonac MI | Winchester TN | 2 | -- | -- | -- |
| 2/13 | 12:23P | 931–[redacted] | Peak | PlanAllow,CallWait | Algonac MI | Incoming CL | 2 | -- | -- | -- |
| 2/13 | 1:17P | 248–594–0600 | Peak | PlanAllow | Algonac MI | Birmingham MI | 2 | -- | -- | -- |
| 2/13 | 1:19P | 931–[redacted] | Peak | PlanAllow | Algonac MI | Winchester TN | 16 | -- | -- | -- |
| 2/13 | 2:46P | 931–[redacted] | Peak | PlanAllow | Algonac MI | Winchester TN | 20 | -- | -- | -- |

EX. E

**CERTIFICATE OF SERVICE**

I, Keith Childress, hereby certify that on the 19th day of February 2010, I served a copy of DEFENDANT CHILDRESS' RESPONSE IN OPPOSITION TO DASSAULT'S MOTION [DN 51] FOR AN EXTENSION OF TIME TO RESPOND TO DEFENDANT CHILDRESS' RECENT PLEADINGS [DN 49 & DN 50] by U.S. mail on Plaintiff's attorney:

GLENN E. FORBIS (P52119)
DOUGLAS P. LALONE (P45741)
RADER, FISHMAN & GRAUER, PLLC
39533 Woodward Ave., Suite 140
Bloomfield Hills, Michigan 48304

Keith Childress

Keith Childress
2234 Elm St.
Algonac, MI 48001
586 693 2585
kchildress@comcast.net