# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DASSAULT SYSTEMES, S.A.,

    Plaintiff,

v.

Case No. 09-10534
Hon. Lawrence P. Zatkoff

KEITH CHILDRESS
d/b/a PRACTICAL CATIA TRAINING,

    Defendant.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on July 20, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendant's motion to set aside default [dkt 49]. The parties have fully briefed the motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the following reasons, Defendant's motion to set aside default [dkt 49] is DENIED.

## II. BACKGROUND

The factual basis for this lawsuit has been detailed in past orders of the Court and need not be fully recited here. Briefly, Plaintiff alleges that Defendant violated federal copyright and trademark law by cloning Plaintiff's CATIA design software and using the illegal copies in

conjunction with Defendant's "Practical CATIA Training" business, in which Defendant instructs others in the use of that software.

Plaintiff filed its complaint on February 12, 2009 [dkt 1]. In response, Defendant, proceeding *pro se*, filed a "Motion for More Definite Statement, Stay of Proceedings, and Evidentiary Hearing" [dkt 7], in which Defendant argued that Plaintiff's complaint improperly contained "secret" grand jury information in violation of Fed. R. Crim. P. 6(e). In a May 22, 2009, opinion and order [dkt 14], the Court denied Defendant's motion. The Court also instructed Defendant to file an answer to the complaint within 30 days of the entry of that order.

Defendant did not file an answer to the complaint as required by the May 22, 2009, order. Instead, on June 25, 2009, he filed an additional motion attacking Plaintiff's complaint. As a result, Plaintiff moved for a default judgment [dkt 19] on July 6, 2009. On October 27, 2009, the Court issued Defendant a show-cause order [dkt 28], demanding that Defendant explain his non-compliance with the May 22, 2009, order. After reviewing Defendant's response to the show-cause order, the Court granted Plaintiff's motion for default judgment in a December 7, 2009, opinion and order [dkt 40], and requested that Plaintiff submit an accounting of its damages. On December 22, 2009, Defendant filed an "emergency" motion for reconsideration [dkt 46] of the Court's order granting a default judgment. On January 15, 2010, the Court denied the motion for reconsideration [dkt 48]. Finally, on January 27, 2010, Defendant filed the current motion to set aside the default, which led to another four months of briefing and filing various procedural motions.

### III. ANALYSIS

**A. Procedural Matters**

The Court must, as customary with this case, address several procedural matters before

proceeding to the substance of Defendant's motion.

Plaintiff filed a motion [dkt 51] to extend its time to respond to Defendant's motion to set aside default by three weeks. Rather than consenting to that request, Defendant filed a 15-page document in opposition to the motion, consisting of a 9-page response brief and 6 pages of exhibits, in which he argues that an extension of time is not warranted. While Defendant is certainly not required to concur in a motion for extension of time, his unnecessarily lengthy objection to the requested extension exemplifies his contumacious conduct in this lawsuit.

Defendant's motion to set aside the default, and the accompanying brief and exhibits, totaled 45 pages and included several affidavits. A reasonable extension would have been appropriate to review that substantial documentation. The request for extension was timely because it was filed before Plaintiff's time to respond to Defendant's motion had elapsed. *See* Fed. R. Civ. P. 6(b)(1)(A). Plaintiff also timely filed its response by the requested extension date, even though its contested motion for an extension had not yet been decided because the briefing period had concluded just prior to that date. The Court finds that good cause existed for Plaintiff's requested extension, and it accepts Plaintiff's response as timely filed.

Plaintiff has also filed a motion for leave to file a sur-reply [dkt 56] to Defendant's reply brief [dkt 55], which reply brief comprises 134 pages of briefing and exhibits. In turn, Defendant filed a 22-page response to Plaintiff's motion for leave, in which he "welcome[d] the opportunity to restate [his] arguments and [found] it necessary to once again correct errors and misrepresentations in [Plaintiff's] pleadings." The Court construes this statement as a concurrence in Plaintiff's motion, and it accepts Plaintiff's sur-reply for filing.

Finally, Defendant has moved pursuant to Fed. R. Civ. P. 15(d) to supplement his 134-page

3

reply with the affidavit of Daryl Patrishkoff [dkt 58]. Defendant maintains that the affidavit was not available at the time he filed his reply brief because Mr. Patrishkoff did not contact Defendant until after Plaintiff had questioned Mr. Patrishkoff regarding this matter, and it was not until that contact that Defendant requested the affidavit.

Fed. R. Civ. P. 15(d) permits the filing of supplemental pleadings; it does not address supplemental briefs. *See Clark v. Fountain*, No. 08-11255, 2009 WL 3199060, at *6 (E.D. Mich. Sept. 29, 2009) (finding Rule 15(d) "inapplicable" to motion to supplement motion for summary judgment because such a motion "is not a 'pleading'"); *Melashenko v. Bowen*, No. CV-F-87-533, 1990 WL 159905, at *4 (E.D. Cal. June, 19, 1990) ("Rule 15(d) concerns amendment of pleadings, not reply briefs . . . ."); *Entrust Mgmt. Co. v. Gold*, No. 84 C 7029, 1986 WL 5668, at *1 n.1 (N.D. Ill. May 1, 1986) ("Rule 15(d) does not apply to supplemental briefs: it applies to complaints, answers, and related pleadings. Briefs are not pleadings."). *See also* Fed. R. Civ. P. 7(a) (defining "pleadings").

The applicable Local Rule states that:

> When a motion, response or written request states that the filing of additional affidavits or other documents in support or opposition is necessary, the assigned judge may specify the time within which the additional documents and brief must be filed by:
>
> (A) entering an ex parte order prepared by the person making the request, or
>
> (B) approving a written stipulation.

E.D. Mich. L.R. 7.1(g)(1). Despite Defendant's representations that Plaintiff's counsel "did not indicate that it will oppose [Defendant's] motion," no written stipulation was filed with the Court for approval. Nor did Defendant prepare and present an ex parte order for his request.

Local Rule 7.1(g)(1) does not articulate a specific legal standard by which to consider the filing of supplemental briefs. *See, e.g.*, *Clark*, 2009 WL 3199060, at *6 (noting only that the court has the discretion to permit supplementation). Other courts have required a showing of "good cause" to supplement. *See Harshaw v. Bethany Christian Servs.*, No. 1:08-cv-104, 2010 WL 610262, at *1 (W.D. Mich. Feb. 19, 2010) (requiring that good cause be shown in motion for leave prior to filing supplemental brief); *MACTEC, Inc. v. Bechtel Jacobs Co., LLC*, Nos. 3:05-cv-255, 3:06-cv-265, 2007 WL 2385953, at *1 (E.D. Tenn. Aug. 16, 2007) (granting motion for leave to file a supplemental brief "[f]or good cause shown").

The Court finds that good cause does not exist to permit Defendant to supplement his reply brief, nor will the Court otherwise exercise its discretion to permit supplementation. Defendant attempts to supplement with an affidavit that was obtained from a fortuitous contact as a result of *Plaintiff's* discovery efforts. If the Court permitted supplementation of a brief with every piece of evidence realized as a case proceeded, seemingly no motion would ever attain ripeness for review. Furthermore, Defendant's proposed supplementation relates to the merits of his defense, and, as discussed *infra*, Defendant's culpability and the resulting prejudice to Plaintiff greatly outweigh the existence of any possible meritorious defenses to this lawsuit. Defendant's motion to file a supplemental brief is therefore denied.

**B. Motion to Set Aside Default**

Defendant has requested that the Court set aside its December 7, 2009, order [dkt 40] granting Plaintiff's motion for default judgment. Plaintiff maintains that Defendant cannot meet any part of the applicable standard to set aside the default.

Fed. R. Civ. P. 55(c) permits the Court to "set aside an entry of default for good cause, and

it may set aside a default judgment under Rule 60(b)." The Court considers the following three factors when deciding such a motion: (1) Whether culpable conduct of the defendant led to the default; (2) Whether the plaintiff will be prejudiced; and (3) Whether the defendant has a meritorious defense. *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983)). These factors control regardless of whether the defendant is seeking to set aside an entry default under Rule 55(c) or a default judgment under Rule 60(b), but the standard is applied more leniently in the Rule 55(c) context. *See Krowtoh II LLC v. ExCelsius Int'l Ltd.*, 330 Fed. Appx. 530, 535 (6th Cir. 2009); *Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 794 (6th Cir. 2002).

Because the default in this case was occasioned by Defendant's disregard of a Court order, there was no entry of default by the Clerk. Further, when the Court granted the default judgment, it was unable to calculate Plaintiff's damages from the face of the complaint. As such, Plaintiff was ordered to submit an accounting of its damages, and Defendant was permitted to respond to that accounting. Following Plaintiff's submission, Defendant requested an extension of time to respond to the accounting, which was granted. The current motion was filed prior to the date by which Defendant was to file his response to the accounting.

All this to say, although the Court has granted Plaintiff's motion for a default judgment, no such judgment has entered due to the above circumstances. Even though Defendant frames his motion in terms of setting aside a default judgment under Rule 60(b), the Court will, out of caution, first consider his arguments under the more lenient Rule 55(c) good-cause standard for setting aside a default, because an order of judgment has yet to enter.

### 1. Culpable Conduct

The Court first must determine whether culpable conduct on the part of Defendant led to the default. *See Citizens Bank v. Parnes*, No. 09-1306, 2010 WL 1753296, at *1 (6th Cir. May 4, 2010)

("The culpable conduct prong should be examined first[.]"). "To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*,796 F.2d 190, 194 (6th Cir. 1986).

Here, this factor weighs most heavily against setting aside the default. Defendant first responded to Plaintiff's complaint by filing a motion for a more definite statement under Fed. R. Civ. P. 12(e) and a request for an evidentiary hearing for alleged violations of Fed. R. Crim. P. 6(e). In a May 22, 2009, order, the Court denied both requests and instructed Defendant to respond to the complaint within 30 days of that order.[1] Instead of complying with the May 22, 2009, order, Defendant filed a second Rule 12 motion seeking a protective order and requesting that certain portions of Plaintiff's complaint be stricken, which filing essentially rehashed his misguided prior Fed. R. Crim. P. 6(e) objections.

At no point did Defendant request an extension of time to file an answer to the complaint or otherwise acknowledge the Court's May 22, 2009, order; instead, he completely ignored that order. In an October 27, 2009, order [dkt 28], the Court denied Defendant's second Rule 12 motion, and it ordered Defendant to show cause why he should not be held in default for violating the Court's May 22, 2009, order.

Following the denial of Defendant's second Rule 12 motion, he still did not file a responsive pleading. Because the October 27, 2009, order contained no instruction regarding the filing of a responsive pleading, such pleading was due within 10 days following that order. *See* Fed. R. Civ.

---

[1]And that instruction was a generous one, because the then-applicable version of Rule 12 required that a responsive pleading be filed within 10 days of the denial of a Rule 12 motion, unless the Court sets a different time. *See* Fed. R. Civ. P. 12(a)(4)(A) (extended to 14 days effective December 1, 2009).

P. 12(a)(4)(A). Defendant explained that he intentionally decided to wait until the Court had adjudicated his motion for reconsideration of the October 27, 2009, order rather than comply with the Federal Rules of Civil Procedure or seek an extension thereof.

Defendant's response [dkt 30] to the Court's show-cause order admitted that he consciously decided not to comply with the May 22, 2009, order so that he could file additional motions. He attributed his non-compliance to his *pro se* status and advice received from a family member who works at a law firm. Finding this explanation wholly inadequate, the Court granted Plaintiff's motion for default judgment.

Thus, it is solely Defendant's culpable conduct that has resulted in the current state of affairs. Defendant's disregard for the Court's orders and the Federal Rules of Civil Procedure have resulted in the inability of the Court to proceed. This case has been pending for 15 months, and not so much as a Rule 16 scheduling conference has taken place because Defendant has yet to file a responsive pleading. Moreover, this is not a case where the delay was inadvertent; rather, it was part of a designed strategy, which speaks directly to Defendant's culpability. *Cf. INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 399 (6th Cir. 1987) (finding that the district court erred in not setting aside default where the district court did not address the culpability of the defendant in a 16-month delay in filing an answer). Defendant was well-aware that he was required to file an answer, and he made a calculated decision to file additional motions rather than comply with the Court's orders and the rules of procedure. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) (affirming dismissal of *pro se* plaintiff's case where "[h]is action was not dismissed as the result of inartful pleading or any lack of legal training, but rather because he failed to adhere to readily comprehended court deadlines of which he was well-aware."); *Williams v. California*, No. C 00-1461-EDL (PR), 2003 WL 151533, at *9 (N.D. Cal. Jan. 14, 2003) (dismissing case involving *pro*

*se* plaintiff where "the problems in this action are not due to plaintiff's lack of familiarity with arcane laws or hidden rules: plaintiff ignores explicit orders and extremely clear deadlines" ).

Defendant relies on his status as a non-lawyer to explain his actions. This cannot, and does not, absolve his conduct. The Court is required to liberally construe a non-lawyer's pleadings, *see, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and it has done so throughout this case. A party's *pro se* status does not, however, provide *carte blanche* to disobey this Court's orders or disregard the Federal Rules of Civil Procedure. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Mitchell v. Union Pac. R.R. Co.*, 501 F.3d 794, 796 (7th Cir. 2007) ("[A] litigant's pro se status does not afford license to disobey orders from this court."); *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988) ("[A]ll litigants, including pro ses, have an obligation to comply with court orders.").

Based on the foregoing circumstances, the Court finds that Defendant's actions were not the product of negligence or inadvertence; instead, they evinced an "intent to thwart judicial proceedings[,]" and Defendant demonstrated a "reckless disregard for the effect of [his] conduct" on these proceedings. *Shepard Claims*, 796 F.2d at 194.

**2. Prejudice to Plaintiff**

The next consideration is whether Plaintiff would be prejudiced if the Court were to set aside the default.

This circuit has held that delay alone will not sufficiently prejudice the plaintiff such that a motion to set aside must be denied. "Rather, the delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 433–34 (6th Cir. 1996).

The Court finds that Defendant's actions have clearly and materially prejudiced Plaintiff's efforts to proceed with this lawsuit and protect its copyrights and trademarks from infringement. *See S. Elec. Health Fund v. Bedrock Servs.*, 146 Fed. Appx. 772, 778 (6th Cir. 2005) ("Whether intentional or not, appellant's eight month delay in responding to the allegations in the suit undoubtedly resulted in tangible harm to the appellees."). By virtue of Defendant's insubordination, Plaintiff has been unable to (1) conduct any discovery in this matter; (2) protect its copyrights and trademarks against infringement; (3) collect royalties from Defendant for the use of its copyrighted software; and (4) destroy or otherwise remove any unauthorized copies of its software from the market. The delayed access to discovery is most critical here, as Defendant's computers could be modified, erased, or destroyed, leaving Plaintiff with scant evidence to prove its claims of infringement.

Finally, it cannot be overlooked that Plaintiff has incurred substantial costs in this matter, both in litigating Defendant's numerous motions and preparing its own motion for default judgment. *See Capitol Records, Inc. v. Zahn*, No. 3:06-0212, 2007 WL 542816, at *2 (M.D. Tenn. Feb. 16, 2007) (concluding that setting aside a default where the plaintiffs "pursued this case within the confines of the rules and prepared extensive papers to justify the entry of default and to support a default judgment" would "reward Defendant at the expense of the Plaintiffs"). Furthermore, there is no indication that Defendant's excessive motion practice and delay tactics would cease if the Court were to set aside the default. *See United States v. Goist*, Nos. 07-3396, 07-4330, 2010 WL 1994733, at *2 (6th Cir. 2010) ("The government would have been prejudiced by a set aside of the default because it would have been subject to additional frivolous filings.").

Considering all of these factors, the Court finds that Plaintiff would be substantially and materially prejudiced if the Court were to set aside the default in this case.

### 3. Meritorious Defense

The final prong addresses whether Defendant has a meritorious defense to the lawsuit. "In determining whether a defaulted defendant has a meritorious defense 'likelihood of success is not the measure.'" *United Coin Meter*, 705 F.2d at 845 (quoting *Keegal v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 374 (D.C. Cir. 1980)). "Rather, if any defense relied upon states a defense good at law, then a meritorious defense has been advanced." *United Coin Meter*, 705 F.2d at 845.

The Court finds the two prior factors are so compelling that even assuming that Defendant's proffered defenses are meritorious, such defenses would not justify setting aside the default.

### 4. Conclusion

Based on the above analysis, the Court concludes that any meritorious defenses Defendant may have are substantially outweighed by Defendant's culpable conduct and the prejudice Plaintiff would suffer if the default were set aside. Defendant has therefore failed to establish good cause to set aside the default under Fed. R. Civ. P. 55(c). Since Defendant has failed to persuade the Court to set aside its entry of default, Defendant's motion necessarily also fails under the stricter standard of Fed. R. Civ. P. 60(b). For all of the stated reasons, Defendant's motion to set aside default is denied.

### C. Plaintiff's Damages

Having determined that the default will not be set aside, the only remaining issue in this case is that of Plaintiff's damages. "When a defendant is in default, the well pleaded factual allegations in the complaint, except those relating to damages, are taken as true." *Griese v. Bauer Corp.*, No. 04-10220, 2006 WL 2360889, at *4 (E.D. Mich. Aug. 15, 2006); *see also Capitol Records*, 2007 WL 542816, at *2; *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006).

A court may conduct a hearing to determine the amount of damages following the entry of a default judgment. *See* Fed. R. Civ. P. 55(b)(2). An evidentiary hearing is not required, however, when damages are "readily capable of mathematical calculation" from the plaintiff's filings. *J & J Sports Prods., Inc. v. Kuo*, No. EP-07-CA-075-FM, 2007 WL 4116209, at *4 (W.D. Tex. Nov. 15, 2007); *see also Capitol Records*, 2007 WL 542816, at *3 ("[A] hearing is not necessary to establish damages where the Court is 'ensured that there is a basis for the damages specified in the default judgment.'") (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).

Plaintiff's complaint alleges that (1) Defendant's unlicensed use of Plaintiff's CATIA software in his Practical CATIA business constitutes copyright infringement under the Copyright Act, 17 U.S.C. §§ 106, 501; (2) Defendant's unauthorized use of Plaintiff's CATIA trademarks in his advertising violates § 1114 of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and constitutes unfair competition under § 1125 of that Act; and (3) Defendant's actions violate the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901.[2] In addition, Plaintiff maintains that Defendant's infringement of its trademarks and copyrights was willful.

### i. Copyright Act

The Copyright Act holds an infringer liable for either actual or statutory damages. *See* 17 U.S.C. § 504. Plaintiff's accounting [dkt 42] seeks actual damages in the form of lost royalties from unpaid licensing fees.

Plaintiff's damages are easily ascertainable and calculable; therefore, an evidentiary hearing is not required. Plaintiff licenses its CATIA software at a yearly rate. Thus, Plaintiff's damage

---

[2]Plaintiff did not address any potential damages under the Michigan Consumer Protection Act in its accounting.

calculation merely requires the multiplication of the number of episodes of infringement (*i.e.*, the number of computers on which Defendant installed the cloned CATIA software) by the yearly licensing fee, and by the number of years of infringement. In its accounting, Plaintiff averred that Defendant (1) failed to pay the $8,047 yearly licensing fee; (2) installed the software on 20 computers; and (3) used the unlicensed software for 6 years. This calculation results in damages of $965,640, which Plaintiff asks the Court to treble under § 1117(a) of the Lanham Act.

Defendant's response to Plaintiff's accounting generally attacks the merits of Plaintiff's complaint rather than the substance of the accounting (*i.e.*, the calculation of damages). Defendant represents that (1) he owns a license for the software; (2) he paid the yearly licensing fees; and (3) he received permission, albeit from a third party, to install the software on additional computers. Such arguments, however, are foreclosed by Defendant's default. In his few direct responses to Plaintiff's accounting, Defendant disagrees with Plaintiff's temporal calculation, noting that his business started in 2001.

Defendant also insists that he was accepted into an instructional program sponsored by Plaintiff—the "HEAT" program—that provides licenses to CATIA instructors at a rate of $350 per year, but he did not participate in that program due to his ongoing licensing "arrangement." The Court, however, cannot accept a substantial reduction of Plaintiff's damages because Defendant may have hypothetically paid a smaller licensing fee through a certain educational program had he actually purchased the CATIA software licenses rather than illegally cloning that software for his business use.

In reply, Plaintiff accepts Defendant's few actual challenges to its accounting. Plaintiff agrees to credit Defendant for the original copy of CATIA that he and/or his company allegedly purchased, and Plaintiff agrees to calculate damages for five years of infringement, rather than six.

13

These adjustments result in damages totaling $764,465 ($8,047 multiplied by 19 computers for five years).

Additionally, Plaintiff invokes § 1117(a) of the Lanham Act and requests that the Court treble these damages. The Court declines this invitation. "[T]he Copyright Act's remedial scheme . . . provides the exclusive remedies for copyright infringement . . . and it contains no provision for trebling statutory damages . . . ." *Nintendo of Am., Inc. v. Aeropower Co., Ltd.*, 34 F.3d 246, 251 (4th Cir. 1994); *see also Budget Cinema, Inc. v. Watertower Assocs.*, 81 F.3d 729, 733 (7th Cir. 1996) ("However, the Copyright Act contains no provision for treble damages."). Plaintiff cannot combine the remedies of the two acts to obtain one enhanced damages award. Accordingly, the Court awards Plaintiff actual damages of $764,465 under § 504 of the Copyright Act.

### ii. Lanham Act

Plaintiff may, however, seek a damage award under the Lanham Act in addition to its recovery under the Copyright Act. *See Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994) ("Congress created two separate statutory schemes to govern copyrights and trademarks; in order to effectuate the purposes of both statutes, damages may be awarded under both."); *Lifted Research Group, Inc. v. Behdad, Inc.*, No. 08-390 (CKK), 2010 WL 2662277, at *3–4 (D.D.C. June 30, 2010) (collecting cases); *Microsoft Corp. v. Compusource Distribs., Inc.*, 115 F. Supp. 2d 800, 811 (E.D. Mich. 2000).

Section 1117 of the Lanham Act permits a plaintiff to elect actual or statutory damages. *See* 15 U.S.C. § 1117(a). In its accounting, Plaintiff did not separately detail its damages related to Defendant's Lanham Act violations (*i.e.*, those associated with Defendant's use of the CATIA trademarks in his advertising and business). Because Plaintiff did not include a calculation of actual damages, the Court concludes that Plaintiff is seeking statutory damages under § 1117(c) for

Defendant's violations of the Lanham Act.

Section 1117(c) authorizes statutory damages for violations of the Lanham Act in an amount:

> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just; or

> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

Plaintiff's complaint alleges that Defendant's actions were willful because Defendant continued to operate his business using Plaintiff's marks despite (1) the rejection of Defendant's proposed trademark by the United States Patent and Trademark Office; and (2) an ongoing FBI investigation into Defendant's business practices. Because Defendant has defaulted, the Court accepts those charges as true, and finds that Defendant's violations of the Lanham Act were willful. *See Medline Indus. Inc. v. 9121-3140 Quebec, Inc.*, No. 1:09-cv-3010-JL, 2010 WL 840196, at *4 (D.N.H. Mar. 5, 2010) ("In default judgment cases in the trademark context, if the plaintiffs plead willfulness in their complaint, the court has the option to imply a finding of willfulness into the damages calculation."); *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 880 (S.D. Ohio 2007) ("Where the defendant has defaulted, willful copyright infringement is proven.") (hereinafter, "*McGee*"); *Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc.*, No. 09- CV 2132 GB D KNF, 2006 WL 728407, at *6 (S.D.N.Y. Mar. 21, 2006) ("In the case at bar, Heavenly's willfulness, in violating the trademark law, is established by virtue of its default in this action."). The Court will thus proceed under § 1117(c)(2) in determining a just and appropriate amount of statutory damages to award Plaintiff.

"Courts have wide discretion in awarding statutory damages." *Microsoft Corp.*, 115 F. Supp.

2d at 811. In *Ford Motor Co.*, the court found that the maximum award for non-willful infringement was appropriate as a willful-infringement award, noting that such amount represented only ten percent of the maximum award for willful infringement. 441 F. Supp. 2d at 853. *See also Ringcentral, Inc. v. Quimby*, __ F. Supp. 2d ___, No. C-09-02693 RS, 2010 WL 1459736, at *15 (N.D. Cal. Apr. 8, 2010) (citing *Ford Motor Co.* and recommending statutory damages in the amount of $200,000 per violation). Based on Defendant's long-running infringement of Plaintiff's marks, Plaintiff's investment in protecting those marks, and the need to deter Defendant and others from infringing upon those marks, the Court finds that an award of statutory damages in the amount of $200,000, which represents only ten percent of the maximum allowable damages for such a willful violation, is just and reasonable. *See, e.g.*, *Ford Motor Co.*, 441 F. Supp. 2d at 853.

### iii. Attorney's Fees and Costs

Plaintiff also requests an award of attorney's fees and costs, and it submits that these expenses total $105,636.97. Despite the several motions and briefs filed post-accounting, Plaintiff has not adjusted this figure. In support of its requested fees and costs, Plaintiff has attached a sealed exhibit detailing its payments to counsel. *See* Pl.'s Accounting [dkt 42] Ex. C.

The Copyright Act permits the Court, "in its discretion" to "allow the recovery of full costs by or against any party" and "also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. "Although attorney's fees are not awarded automatically and are still 'a matter of the court's discretion,' . . . the grant of fees is routine and is 'the rule rather than the exception.'" *Fharmacy Records v. Nassar*, 572 F. Supp. 2d 869, 880 (E.D. Mich. Aug. 15, 2008) (internal citations omitted). Additionally, "[c]ourts have routinely held that the award of full costs under the Copyright Act is mandatory." *Microsoft Corp.*, 115 F. Supp. 2d at 812.

Likewise, under the Lanham Act, the Court may award "reasonable" attorney's fees to the

prevailing party "in exceptional cases." 15 U.S.C. § 1117(a). "A case should be considered 'exceptional' only when the infringement is 'malicious, fraudulent, willful, or deliberate.'" *Johnson v. Jones*, 149 F.3d 494, 503 (6th Cir. 1998) (quoting *Hindu Incense v. Meadows*, 692 F.2d 1048, 1051 (6th Cir. 1982)); *see also Malletier v. Apex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 359 (S.D.N.Y. 2010) ("'Willful infringement' is an 'exceptional circumstance' warranting the award of attorney's fees."); *Ford Motor Co.*, 441 F. Supp. 2d at 854 (awarding attorney's fees where the "unlawful conduct was at least deliberate"). However, just because the "relevant conduct is found to be willful, fraudulent, and deliberate" does not automatically mean that the case is "exceptional." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1192 (6th Cir. 1997).

As discussed *supra*, Defendant's infringement was willful and deliberate. The Court concludes that attorney's fees are warranted under the Copyright Act, and that this case is "exceptional" within the meaning of § 1117(a) such that attorney's fees are appropriate under the Lanham Act as well. Plaintiff is thus entitled to its reasonable attorney's fees and costs.

In calculating reasonable fees, "the district court must first arrive at the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate[,]" then it must "exclude excessive, redundant, or otherwise unnecessary hours[,]" and finally, "the resulting sum should be adjusted to reflect the 'result obtained.'" *Id.* at 1193 (internal citations omitted).

However, Plaintiff's payment records indicate only lump-sum monthly billings. The Court is unable to review the fees for reasonableness. *See Fharmacy Records*, 572 F. Supp. 2d at 882 ("These entries do not allow the Court to assess the amount of time spent on specific tasks by individual lawyers . . . ."); *Microsoft Corp.*, 115 F. Supp. 2d at 812. Therefore, IT IS ORDERED that Plaintiff submit a detailed description of its attorney's fees and costs, the work performed, and

17

the hourly billing rates, within 10 days of the entry of this order so that the Court may conduct the required reasonableness inquiry.

**D. Injunction**

Finally, Plaintiff requests the entry of a permanent injunction to enjoin Defendant from future infringement of the trademarks and copyrights associated with its CATIA software.

Traditionally, a plaintiff seeking a permanent injunction must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "Permanent injunctions are granted where liability is determined and a continuing threat to a copyright exists." *Digital Filing Sys., L.L.C. v. Aditya Int'l*, 323 Fed. Appx. 407, 420 (6th Cir. 2009).

The Court finds that each of the factors favor the issuance of a permanent injunction in this matter. Concerning the first two factors, if Defendant is not enjoined from infringing Plaintiff's trademarks and copyrights, he will continue to profit by trading on Plaintiff's product and goodwill, which injuries are irreparable and are not adequately remedied by monetary damages. *See Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006); *Specialty Vehicle Acquisition Corp. v. Am. Sunroof Corp.*, No. 07-13887, 2008 WL 2795834, at *8 (E.D. Mich. July 18, 2008); *McGee*, 490 F. Supp. 2d at 882. Considering the latter two factors, Defendant faces no cognizable hardship in being enjoined from trademark and copyright infringement, and the public interest is served by enforcing the Copyright and Lanham Acts. *Audi DG*, 469 at 550; *Specialty Vehicle*, 2008 WL 2795834, at *8–9; *McGee*, 490 F. Supp. 2d at 883. A permanent injunction is therefore both appropriate and

necessary.

## IV. CONCLUSION

Accordingly, and for the above reasons, it is HEREBY ORDERED that Defendant's motion to set aside default judgment [dkt 49] is DENIED;

IT IS FURTHER ORDERED that (1) Plaintiff's motion for extension of time to file response [dkt 51] is GRANTED; (2) Plaintiff's motion for leave to file sur-reply [dkt 56] is GRANTED; and (3) Defendant's motion for leave to file a supplemental brief [dkt 58] is DENIED;

IT IS FURTHER ORDERED that Plaintiff shall submit a detailed list of its incurred attorney's fees and costs within 10 days of the entry of this order;

IT IS FURTHER ORDERED that judgment shall enter in an amount of $964,465, which represents actual damages of $764,465 under § 504 of the Copyright Act and statutory damages of $200,000 under § 1117(c)(2) of the Lanham Act.

IT IS FURTHER ORDERED that a permanent injunction shall enter.

IT IS SO ORDERED.

                                           S/Lawrence P. Zatkoff
                                           LAWRENCE P. ZATKOFF
                                           UNITED STATES DISTRICT JUDGE

Dated: July 20, 2010

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on July 20, 2010.

                                           S/Marie E. Verlinde
                                           Case Manager
                                           (810) 984-3290