UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DASSAULT SYSTEMES, S.A.,

      Plaintiff,

v.

KEITH CHILDRESS,

      Defendant.

Case No. 09-cv-10534
Hon. Matthew F. Leitman

_____/

## ORDER (1) DENYING DEFENDANT'S MOTION FOR RECONSIDERATION OF THE ORDER DECIDING THE PARTIES' 2024 POST-TRIAL MOTIONS (ECF No. 732), (2) DENYING DEFENDANT'S MOTIONS TO RESUME HEARING, FOR AN EVIDENTIARY HEARING, AND FOR LEAVE TO FILE SUBPOENAS (ECF Nos. 741, 742, 748), AND (3) GRANTING DEFENDANT'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL BRIEF (ECF No. 743)

This civil action involves claims and counterclaims between Plaintiff/Counter

Defendant Dassault Systemes, S.A. ("Dassault") and Defendant/Counter-Plaintiff

Keith Childress.  The parties' dispute arises out of (1) Childress' use and alleged

copying of a Dassault software program called CATIA V5, (2) Childress' use of

Dassault's CATIA trademark in the name of his software training business and

website address, and (3) Dassault's efforts to stop Childress from using the CATIA

software and the CATIA mark.  The case has previously been assigned to two other

district judges, and one of those judges presided over a trial of this action in 2017.

1

The United States Court of Appeals for the Sixth Circuit later vacated the judgment entered following that first trial and remanded for a new trial.

This Court presided over the re-trial in March of 2024.  That trial involved Dassault's claims against Childress for copyright infringement and trademark infringement, on one hand, and Childress' counterclaim for abuse of process, on the other hand.  Both parties were represented at trial by experienced and effective counsel.  The jury returned a verdict in favor of Dassault on its copyright infringement claim and determined that Dassault was entitled to damages of $458,862.50 as a remedy for that infringement. (*See* Verdict Form, ECF No. 667, PageID.25044-25046.)  The jury also found that Childress had infringed Dassault's trademark, but it concluded that Dassault's trademark claim was barred by Childress' fair use defense. (*See id.*, PageID.25046-25047.)   Finally, the jury found in Dassault's favor on Childress' abuse of process claim. (*See id.*, PageID.25048.)

After the jury returned its verdict, both parties, through their trial counsel, filed post-trial motions.  Childress filed multiple motions for a new trial on several different grounds. (*See* Childress Mots., ECF Nos. 675, 676, 679, 680.)  Dassault moved for judgment as a matter of law against Childress' fair use defense. (*See* Dassault Mot., ECF No. 663.)  In connection with that motion, Dassault told the Court that if the Court accepted Dassault's argument that Childress' fair use defense failed as a matter of law, Dassault would not seek a new trial on trademark

infringement damages; instead, it would seek only prospective injunctive relief based upon the jury's finding that Childress infringed its trademark by using the CATIA mark in the name of his business and in his website address. (*See* Dassault Reply, ECF No. 671, PageID.25065.)

The Court denied Childress' motions and granted Dassault's motion. (*See* Order, ECF No. 718.)  The Court ruled that Dassault was entitled to judgment in its favor on Childress' fair use defense because, as a matter of law, Childress' use of Dassault's CATIA trademark was not a fair use.  Dassault also filed a motion for attorneys' fees. (*See* Dassault Mot., ECF No. 674.)  During a hearing on that motion, the Court indicated that it would grant some award of fees but that it would determine the amount of fees at a later date. (*See* 11/21/2024 Hr'g Tr., ECF No. 728, PageID.29177.)

Following the Court's rulings on the post-trial motions, here is where things stand.  The verdict and damage award in favor of Dassault on its copyright infringement claim remain intact.  The jury's finding that Childress infringed Dassault's trademark also remains intact, and that finding is now entitled to legal effect based upon the Court's determination that Childress' use of Dassault's trademark was not a fair use.  Dassault will be seeking injunctive relief to prevent future trademark infringement but will not be seeking damages for that infringement.  Finally, the jury's rejection of Childress' abuse of process claim remains intact.

3

Childress has now parted ways with his trial counsel and has filed, *pro se*, what he calls a "Motion for Reconsideration" of the Court's rulings on the parties' post-trial motions. (*See* Childress Mot., ECF No. 732.)  That name is a misnomer, however, because (with one minor exception) the motion does not point to claimed errors in the Court's rulings on the prior motions.  Instead, Childress raises new claims of trial error that his trial counsel did not raise in the motions for new trial that counsel filed on Childress' behalf.  And with one exception, Childress' attorney did not object at trial to the alleged errors that Childress now raises in his motion.

The Court has carefully reviewed Childress' arguments and concludes that none of them entitle him to a new trial or any other relief.  Accordingly, for the reasons explained in more detail below, Childress' motion for reconsideration is **DENIED**.[1]

---

[1] After the Court held a hearing on Childress' motion for reconsideration, he filed the following additional motions: (1) a motion to resume the hearing (ECF No. 741), a motion for an evidentiary hearing (ECF No. 742), (3) a motion for leave to file a supplemental brief and a corrected supplemental brief (ECF Nos. 743, 746-2), and (4) a motion for leave to serve subpoenas (ECF No. 748).  The Court **GRANTS** Childress' motion for leave to file a supplemental brief, and the Court will consider the corrected supplemental brief that Childress' submitted on May 27, 2025, as formally filed. (*See* Supp. Br., ECF No. 746-2.)  The Court will address below the other motions that Childress filed after the hearing on his motion for reconsideration.

## I

In his motion, Childress argues that he is entitled to a new trial because:

1. The Court's trial schedule and certain remarks made by the Court led his trial counsel to limit the scope and length of Childress' direct examination and his case more generally;

2. Errors in the jury instructions and verdict form "prevented" the jury from reaching a verdict on several of his defenses to Dassault's trademark infringement claim; and

3. The Court erred in answering a question from the jury and in failing to send the trial exhibits into the jury room during deliberations.

In addition to his arguments in support of a new trial, Childress also contends that the Court erred when it granted Dassault's motion for judgment as a matter of law on his fair use defense (to Dassault's trademark infringement claim) and when it determined that Dassault is entitled to an award of attorneys fees on its copyright infringement claim.

The Court addresses each of Childress' arguments separately below.

## II

The Court begins with Childress' argument that the Court's trial schedule and statements caused his trial counsel to truncate the presentation of his direct testimony and his overall case. (*See* Childress Mot., ECF No. 732, PageID.29313.) The argument has three components. The Court will address each component individually.

**A**

Before turning to the separate components of Childress' argument, the Court pauses to highlight Childress' failure to support his position with what should be the best available evidence. As noted above, Childress contends that the Court's schedule and statements led his trial counsel to eliminate essential portions of Childress' testimony and case. The best evidence of that would be a declaration or affidavit from the attorney confirming that he made such decisions based on statements from the Court. But Childress presents no such statement from his trial counsel.[2] And, as noted below, counsel never complained during trial that the Court's comments or schedule were leading him to limit his presentation, nor did he raise such a claim in the post-trial motions that he filed on Childress' behalf. With this background in mind, the Court turns to Childress' specific claims as to how the Court purportedly led his trial counsel to limit his (Childress') case.

---

[2] At a post-trial hearing held after Childress had parted ways with his trial counsel, the Court told Childress that, if he desired, the Court would hold an evidentiary hearing at which Childress could call his trial attorney as a witness and elicit testimony from the attorney concerning whether the attorney (1) had, in fact, felt the need to cut portions of Childress' case based on statements from the Court and (2) had actually made cuts in response to those statements. (*See* 11/21/2014 Hr'g Tr., ECF No. 728, PageID.29189-29192.) Childress did not accept the Court's offer. (*See id*.) In a later-filed motion, Childress did request an evidentiary hearing, but the purpose of that proposed hearing was to explore *other* issues concerning "drafting the erroneous jury instructions and jury verdict form." (Childress Mot., ECF No. 742, PageID.32122.)

**B**

Childress first seems to suggest that the Court erred when it set a 15-hour time limit for each side to present its case.[3]  He notes that before the trial began, his trial attorney requested 20 hours to present Childress' case and that, despite that request, the Court established the 15-hour time limit. (*See* Childress Mot., ECF No. 732, PageID.29317-29318.)  Childress then highlights that the Sixth Circuit reversed the jury verdict against him in the first trial in this case because, among other things, the former presiding judge had set a 10-hour time limit that the Sixth Circuit deemed insufficient.  He appears to suggest that this Court's 15-hour time limit caused the same unfair prejudice as the 10-hour time limit of which the Sixth Circuit disapproved.

Childress has not shown that the Court erred when it adopted the 15-hour time limit.  Although Childress' trial counsel requested 20 hours of trial time before the trial began, counsel did not ask for any time beyond 15 hours once trial commenced, nor did counsel ever suggest at trial that the 15-hour time limit was hindering him

---

[3] The Court says "seems to suggest" because it is not clear that Childress is independently attacking the 15-hour time limit.  He identifies the time limit and seems to contend that the Court erred when it imposed that limit in the face of his trial attorney's request for 20 hours of trial time, but he later says that "the 15-hour limit was not the problem." (Childress Mot., ECF No. 732, PageID.29322.)  Out of an abundance of caution, the Court will treat Childress' comments concerning the 15-hour time limit as if they are an independent attack on the Court's management of the trial.

from presenting Childress' entire case.  That Childress' trial counsel did not raise a concern about the 15-hour time limit once trial began is significant because when the Court set the limit – before trial – the Court told the parties that it would "add some time [beyond the 15 hours] on at the end" if the 15 hours turned out to be insufficient. (02/28/2024 Hr'g Tr., ECF No. 713, PageID.27068.)   Under these circumstances, the fact that Childress' trial attorney did not ask for more than 15 hours once trial began shows that 15 hours was sufficient.

Indeed, we *know* that 15 hours was sufficient because Childress' trial counsel rested Childress' case well *before* that deadline expired.  More specifically, when counsel completed his final witness examination, Childress had more than *five hours* remaining on his 15-hour time limit. (*See* Time Chart, ECF No. 732, PageID.29323.) This stands in stark contrast to Childress' first trial in which he ran out of time before concluding the presentation of his evidence.

For all of these reasons, the Court did not abuse its broad discretion in setting a 15-hour time limit for each side to present its case. *See*, *e.g.*, *Dassault Systemes, SA v. Childress*, 828 F. App'x 229, 244 (6th Cir. 2020) (explaining that "'[a] district court has broad discretion to place limits on the presentation of evidence to prevent delay, waste of time, and needless presentation of cumulative evidence'") (quoting *Sutkiewicz v. Monroe Cnty. Sheriff*, 110 F.3d 352, 361 (6th Cir. 1997))).

## C

Childress next contends that the Court unduly restricted his ability to present his case by limiting the number of days available for trial.  He says that the Court initially allotted only eight days for trial, then eliminated one of those days (thus shortening the trial to seven days) after the trial commenced, and rigidly adhered to a "commitment" it had made to the jury during *voir dire* that it would conclude the trial by Friday, March 22, 2024. (Childress Mot., ECF No. 732, PageID.29314-29318.)   The record shows that the Court's trial calendar did not hinder Childress' ability to present his case.

First, the Court did not make a "commitment" to the jury to conclude the trial by March 22.  Instead, the Court told the jury venire that it and the parties would work diligently to conclude the proofs by that date but that it was possible that the presentation of evidence would go "a hair later." (03/13/2024 Trial Tr., ECF No. 730, PageID.29251.)  The Court stressed that it "hope[d]" to get the case to jury by March 22. (*See id.*)  The Court's statement to the jury pool was consistent with its message to the parties.  Before the trial started, the Court told the parties that while March 22 was the last day that the Court had officially blocked off on its calendar for trial, it could extend the trial past that date if it became necessary to do so. (*See* 02/28/2024 Hr'g Tr., ECF No. 713, PageID.27065, 27068.)  And the Court conducted the trial in a manner that was fully consistent with these statements: it repeatedly urged the

parties to work hard to conclude by March 22, but it did not treat that date as some sort of immovable deadline.

Second, statements by Childress' trial counsel during trial demonstrate that neither the number of trial days nor the March 22 anticipated conclusion date restricted the presentation of Childress' case. On the morning of Tuesday, March 19, counsel told the Court that he wanted to "bring the Court into [his] discussions" with Dassault's lawyers concerning "the scheduling." (03/19/2024 Trial Tr., ECF No. 704, PageID.26363.) He identified the witnesses that he would and would not be calling in Childress' case in chief, and he predicted that the case would be ready for submission to the jury "late Wednesday or Thursday" – *i.e.*, *before* the Friday, March 22 anticipated completion date set by the Court. (*Id.*) Simply put, Childress' trial counsel had concluded four days before the Court's anticipated end date that he would be able to comfortably conclude Childress' case in advance of that date. And he did just that. He completed the presentation of direct testimony on Wednesday, March 20 – without ever objecting that the number of days allotted for trial impeded his ability to fully present Childress' case to the jury.

For all of these reasons, the Court's trial schedule did not unfairly restrict Childress' ability to present his case.

**D**

Finally, Childress contends that certain statements by the Court – none of which were objected to by his trial attorney – caused his attorney to truncate Childress' case.  He has failed to make that showing.

Childress focuses primarily upon a joke that the Court made concerning the expected length and detail of Childress' testimony.  The Court made the joke off-the-record and outside of the presence of the jury on the afternoon before Childress took the witness stand.  Childress insists that the joke led his trial attorney to limit Childress' testimony.  For the reasons explained below, Childress has failed to show that the joke caused his trial lawyer to limit the length of his (Childress') direct examination.

As an initial matter and as the Court has repeatedly acknowledged, it was wrong for the Court to make the joke.  No doubt about that.  Childress deserved better.

But the Court has also explained at length how the record shows that the joke did not lead Childress' trial attorney to limit the length of Childress' direct examination. (*See* 12/09/2024 Conf. Tr., ECF No. 729, PageID.29232-29241.)  The Court incorporates that explanation here.  Most importantly, after the Court made the joke and before Childress began his direct testimony, the Court had the following exchange with Childress' trial attorney in which (1) the Court stressed that the

11

attorney could question Childress for as long as he wanted (within the 15-hour time limit) and (2) the attorney said that he felt he had plenty of time to ask the questions he deemed appropriate:

> THE COURT: And do you have any sense as to how long [Childress'] testimony might take?
>
> MR. BENDURE: Two to three hours.
>
> THE COURT: All right. Look, on that point, I want to reiterate that I don't want you guys to feel pressure from me to get him on and off. As I said yesterday, as I've gotten to know Mr. Childress, it's clear to me he has – I don't use this term in the pejorative – a story that he wants to tell. And as you indicated, Mr. Bendure, there are strategic reasons to annotate the story and to be succinct. If you make that call, and that would – if I was the lawyer, that might be my call, but I'm the judge, and I want you to guys to understand, from my perspective, I'm not pressuring you to get him on and off. I want you to feel free to take whatever amount you think is the effective time, within your time limit, to present his testimony, and we'll take whatever there is offered from your side. Okay.
>
> MR. BENDURE: I appreciate that reassurance. I'm quite confident that we will be able to meet the time constraints that the Court set.
>
> THE COURT: Oh, you guys probably have plenty of time left. So whatever strategic decision you make about how much to present and, you know, you guys are watching the jury as much as I am, so you see – you can see how much patience they have for all of us. So you make whatever decision[s] you think are appropriate there.

(03/20/2024 Trial Tr., ECF No. 705, PageID.26466-26467.)

Moreover, during Childress' testimony, the Court assured him directly that it was "not concerned" with the length of his presentation. (*Id.*, PageID.26488.) Then, in a later exchange with Childress before his direct examination ended, the Court again assured him that he could take however much time he needed to tell his side of the story to the jury:

> THE COURT: One point I want to – Mr. Childress, you do not have to and you shouldn't be saying, oh, I don't want to get afoul of the judge during your testimony. Remember, my view is, this is your opportunity to tell your story, and I do not want you sitting there thinking that I'm going to be agitated or something, by how long your answer is or how long your testimony is. I am not. This is your opportunity and do with it what you wish.
>
> A. Thank you very much, sir – Your Honor.

(*Id.*, PageID.26544-26545.)  These statements by the Court further underscored that Childress' trial attorney was free to examine Childress as long as counsel thought appropriate within the contours of the overall 15-hour time limit.  Notably, Childress' trial attorney never suggested otherwise during or after the trial.

In the end, with respect to the joke, two things are true: first, it was inappropriate, and second, it did not lead Childress' trial counsel to cut parts of Childress' direct examination.  Childress is therefore not entitled to a new trial based upon the joke.

Childress also highlights other comments by the Court that, he says, show the Court led his trial counsel to truncate his (Childress') testimony, but, again,

13

Childress' arguments fall short.  For instance, as support for his argument that the Court caused his trial counsel to limit his (Childress') direct examination, Childress points to the Court's statement that "we will have to hustle to get this thing to the jury by lunch on Friday." (Childress Mot., ECF No. 732, PageID.29322.)  But the Court made that statement *after* Childress had completed both his direct and re-direct examination.  The statement therefore could not have played any role in his trial counsel's decision as to how much testimony to elicit from Childress.

Childress further points to the Court's statement that it wanted to get the jurors "back to work as soon as possible" as evidence that the Court caused his trial counsel to limit his (Childress') case. (*Id.*, PageID.29318.)  But Childress takes that statement out of context.  The Court made that statement when it was discussing with counsel for both parties how to respond to a juror who had experienced a death in his family. (*See* 03/19/2024 Trial Tr., ECF No. 704, PageID.26360.)  One possible option was to take some time off to allow the juror to attend his family member's funeral and grieve. (*See id.*)  The Court indicated that it did not prefer that option because it would prolong the trial and lengthen the time that the jurors would be burdened with their service. (*See id.*)  It was in that context that the Court made the statement about getting the jurors back to work; the statement had nothing to do with the amount of evidence or testimony that each side could present.  And it placed no pressure on Childress' trial counsel to truncate Childress' case.  Childress has not

convinced the Court that it made any statement that caused his trial counsel to trim parts of his (Childress') case that the attorney wished to present.

## E

Childress resists the Court's conclusion that its trial schedule, statements, and joke did not lead his trial counsel to limit his (Childress') testimony and case.  He offers a timing argument that, he says, demonstrates that those things must have caused his trial counsel to shorten his (Childress') testimony and presentation.

Childress begins his timing argument by highlighting that in a pre-trial submission to the Court, his trial counsel estimated that he would (1) need 20 hours to present Childress' case and 6 hours to present Childress' direct examination testimony and (2) be calling several fact witnesses in addition to Childress. (*See* Childress Mot., ECF No. 732, PageID.29315, 29323.)  Childress then notes that his trial counsel questioned him for only two hours and did not call any fact witnesses other than Childress and Childress' wife. (*See id.*, PageID.29323.)  And he insists that the "only events that transpired" between his trial attorney's pre-trial predictions concerning the length of Childress' case and the witnesses to be called and the actual presentation of Childress' case at trial were the Court's choice of schedule and its statements outlined above. (*Id.*, PageID.29324.)   From all of this, Childress concludes that the Court's schedule and statements are the "only plausible

explanation" for his trial counsel's decision to shorten Childress' direct examination and forego calling Childress' other fact witnesses. (*Id.*, PageID.29323.)

The essential premise of this argument – that this Court's determination of the schedule and its statements were the only "events that transpired" between Childress' trial counsel's pre-trial predictions and the attorney's ultimate choice of which testimony and which witnesses to present – is incorrect. Indeed, much of the trial "transpired" during that interval. Most importantly, Dassault presented its witnesses, including Childress (whom Dassault called as an adverse witness), and Childress' trial counsel cross-examined those witnesses (with the exception of Childress, whom the attorney questioned on direct examination in Childress' case-in-chief). Childress' trial counsel may well have modified his strategy after those portions of the trial. Indeed, trial attorneys frequently calibrate and adjust their presentations as events unfold during trial. Here, Childress' trial counsel may have been pleased with his cross-examination of Dassault's witnesses and with Childress' adverse testimony during Dassault's case, and that satisfaction may have led him to conclude that he no longer needed to present portions of Childress' case that he initially thought he may need. Alternatively, counsel may have concluded that Childress did not hold up well when questioned in Dassault's case, and counsel may have concluded that the best strategy was to limit Childress' exposure to additional cross-examination by curtailing the scope of Childress' direct testimony. Or he could have determined that

Childress did very well during his two hours of direct testimony and that additional testimony from Childress was not essential. All of these would be plausible explanations for the attorney's decision to present less testimony and fewer witnesses than he originally predicted. Simply put, Childress' trial counsel's pre-trial predictions concerning the length of this case and the scope of witness examinations were just that – predictions that were subject to change and adjustment as events unfolded in real time at trial. The fact that counsel deviated from those predictions does not establish, as Childress contends, that counsel truncated Childress' case based on statements that the Court had made.

### III

### A

The Court next turns to Childress' arguments that the jury instructions and verdict form "prevented" the jury from reaching a verdict on several of his defenses. (Childress Mot., ECF No. 732, PageID.29303.) His trial counsel did not object to the jury instructions or verdict form on any of the grounds now advanced by Childress. Therefore, the Court reviews Childress' challenges to the jury instructions and verdict form "for plain error." *Bath & Body Works, Inc. v. Luzier Personalized Cosms., Inc.*, 76 F.3d 743, 750 (6th Cir. 1996). *See also* Fed. R. Civ. P. 51(d)(2).

Childress counters that his trial counsel did preserve his (Childress') challenges to the jury instructions and verdict form – and that plain error review does

not apply – even though counsel did not object on the grounds now advanced by Childress. (*See* Childress Mot., ECF No. 743.)  As support for this contention, Childress cites the Sixth Circuit's decision in *Bath & Body Works*, 76 F.3d 743. (*See id.*, PageID.32196.)  According to Childress, *Bath & Body Works* stands for the proposition "that an objection to a jury instruction is preserved 'when it is plainly apparent from the discussion between the parties and the judge that the judge was aware of a party's dissatisfaction with the instruction, as read to the jury, and the specific basis for the claimed error or omission.'" (*Id.*, quoting *Bath & Body Works*, 76 F.3d at 749.)  Childress says that his challenges to the jury instructions and verdict form are preserved under *Bath & Body Works* because "[d]uring the Court's March 21, 2024 discussion with the attorneys regarding the jury instructions and verdict form, [his trial counsel] stated on the record, 'our contention is that acquiescence and laches bar their trademark claims' and cited the basis for that contention." (*Id.*, quoting 03/21/2024 Trial Tr., ECF No. 716, PageID.27571-27572.)

But the statement by Childress' trial counsel that Childress quotes did not concern the jury instructions or the verdict form.  Instead, counsel made the statement while he was presenting argument in support of a motion for judgment as a matter of law.  Counsel's statements during that motion hearing were not an expression of dissatisfaction with a particular aspect of the jury instructions or verdict form.  And nothing in *Bath & Body Works* suggests that a party preserves a

challenge to a jury instruction (or to the lack of an instruction) by raising arguments during a motion hearing that does not relate to the content of the instructions. For all of these reasons, Childress' challenges to the jury instructions and verdict form are not preserved, and plain error review applies.

Plain error is a "very high standard." *Maday v. Pub. Librs. of Saginaw*, 480 F.3d 815, 820 (6th Cir. 2007). It exists where an obvious error "affects" a party's "substantial rights." Fed. R. Civ. P. 51(d)(2) (allowing review of jury instructions absent an objection if the instructions rise to the level of a "plain error"). And that happens only in "exceptional circumstances." Advisory Committee Note to 2003 Amendment of Fed. R. Civ. P. 51 (explaining the genesis of the plain error standard in Rule 51(d)(2)). Relief on plain error review is appropriate, for instance, where a set of jury instructions was so clearly wrong "as to produce a grave miscarriage of justice." *Craddock v. FedEx Corp. Servs., Inc.*, 102 F.4th 832, 842 (6th Cir. 2024) (quoting *United States v. Miller*, 734 F.3d 530, 538 (6th Cir. 2013)). Likewise, relief from an erroneous verdict form on plain error review is proper where errors on the form "result[ed] in the substantial prejudice of the party challenging" the form. *Id*. (quoting *Reynolds v. Green*, 184 F.3d 589, 595 (6th Cir. 1999)).

For the reasons explained below, Childress has not satisfied the demanding plain error standard with respect to any of the purported errors that he identifies in the jury instructions and verdict form.

**B**

Before turning to Childress' specific objections to the jury instructions and verdict form, the Court pauses to address Childress' suggestion that the Court prevented him from having any meaningful input into the process of drafting the instructions and form. (*See* Childress Reply, ECF No. 734, PageID.31683.)  As support for that contention, he notes that the Court held in-chambers meetings with the attorneys to discuss and revise the jury instructions and verdict form and did not invite him to attend.  And he suggests that if the Court had included him in those meetings, he would have caught the claimed errors that his trial counsel supposedly missed. (*See id.*)

But Childress passed up a significant opportunity for input into the jury instructions and verdict form.  He chose not to attend the on-the-record conference during which the Court and the parties attempted to finalize the instructions and form.  When he did not appear for that conference, the Court inquired about his absence and made sure that he had been informed about those proceedings.  His trial counsel assured the Court that Childress "trust[ed]" him (the attorney) to handle the issues concerning the jury instructions and verdict form because Childress regarded them as "issue[s]" of law that the attorney could handle on his own. (03/21/2024 Trial Tr., ECF No. 716, PageID.27503.)  Here is the exchange between the Court and

20

Childress' trial counsel that occurred at the on-the-record status conference where

the jury instructions and verdict form were addressed:

> THE COURT: Is Mr. Childress joining us this morning?
>
> MR. BENDURE: He is not here and he's not planning to be.
>
> THE COURT: He's certainly not required to be here, I want to be clear about that, but he is – you know, he's been a very involved person, and I just wanted to make sure he knew we were meeting today and it was his decision to be somewhere else?
>
> MR. BENDURE: I think he regarded this as an issue of law that he trusts me to be able to handle fairly well and –
>
> * * * *
>
> THE COURT:      So, anyway, I'm happy to have you guys proceed without him and that's no problem.  I just want to make sure he knew we were here.
>
> MR. BENDURE: Yes.

(*Id.*, PageID.27503-27504.[4])  Moreover, Childress *was* present during a subsequent

on-the-record discussion during which the Court and the attorneys addressed the final

revisions to the jury instructions and verdict form just before the case was submitted

---

[4] Childress now claims that he did not attend the jury instruction conference because he believed that he would not be able to address the Court directly during that conference. (*See* Childress Mot., ECF No. 738, PageID.31747.)  That contrasts with his trial counsel's statement that Childress chose not to attend the conference because he trusted the attorney to handle the issues related to the jury instructions and verdict form.

to the jury. (*See* 03/22/2024 Trial Tr., ECF No. 707, PageID.26709-26726.)  And he was present when, after the Court read the instructions to the jury, the Court asked the parties on two separate occasions whether there were any objections to the instructions as read (and both sides confirmed they had no such objections). (*See id.*, PageID.26865-26866; 26922-26923.)

Childress counters that even when he was present, he had no opportunity to provide input into the jury instructions because the Court unfairly "muzzled" him. (Childress Reply, ECF No. 734, PageID.31683.)  The Court did that, Childress says, by requiring him to submit objections to the proposed jury instructions through his retained counsel, rather than allowing him to directly address the Court. This argument fails for two reasons.

First, it is well-established that a civil litigant has no right to hybrid representation – to represent himself with respect to some matters while also being represented by counsel. *See*, *e.g.*, *Chasteen v. Jackson*, No. 09-cv-413, 2012 WL 1564493, at *3 (S.D. Ohio May 3, 2012) (holding that "Plaintiff is not entitled to hybrid representation, and the Sixth Circuit and other courts in this circuit routinely strike and/or refuse to consider *pro se* pleadings filed by represented parties"); *Novel v. Zapor*, No. 14-cv-264, 2015 WL 12733467, at *1 (S.D. Ohio Apr. 22, 2015) (noting that "a party is not entitled to hybrid representation").  Having chosen to be represented by his experienced attorney, Childress gave up any right he may

otherwise have had to directly address the Court with respect to the legal questions to be decided by the Court. The Court was under no obligation to hear from both Childress' attorney and Childress.

Second (and more importantly), even though Childress was not permitted to speak directly with the Court or to personally attend in-chambers conferences during which the Court discussed instructional issues with counsel, Childress had ample opportunity to provide input into the jury instructions and verdict form. As noted above, the process of drafting and finalizing the jury instructions and verdict form occurred over several days – and included the on-the-record hearing that Childress chose not to attend. Throughout that process, Childress had a chance to voice to his trial counsel any concerns that he had with the evolving versions of the jury instructions and verdict form so that counsel could evaluate his concerns and, if appropriate, share them with the Court. And if Childress had attended the on-the-record conference at which the Court addressed the jury instructions and verdict form, he could have actively consulted with his trial counsel concerning those matters as the conference proceeded even though he was not permitted to directly address the Court. Likewise, Childress could have highlighted any perceived errors or omissions in the jury instructions for his attorney to relay to the Court when the Court, after reading the instructions to the jury, asked if either side had any objections to the instructions as read. (*See* 03/22/2024 Trial Tr., ECF No. 707,

PageID.26865-26866, 26923-26924.)   For all of these reasons, the Court cannot accept Childress' suggestions that he was shut out of the process of drafting and finalizing the jury instructions and verdict form.

## C

Childress first argues that the portion of the verdict form concerning Dassault's trademark infringement claim was flawed because the form "omitted a critical question regarding 'likelihood of confusion.'" (Childress Mot., ECF No. 732, PageID.29331.)   More specifically, Childress contends that (1) likelihood of confusion is the touchstone of liability for trademark infringement and (2) the Court therefore had to specifically ask the jury on the verdict form whether it found by a preponderance of the evidence that his (Childress') use of Dassault's CATIA trademark was likely to cause confusion as to the origin, sponsorship, or approval of Childress' products/services. (*See id*.)   He seems to suggest that because the jury was not asked that question, the jury could have found him liable for trademark infringement without ever making the required finding of likelihood of confusion. The Court disagrees.

Childress' argument ignores that the jury was instructed that it could find in favor of Dassault on its trademark infringement claim only if it first found that Childress "used the term CATIA in a manner that is likely to cause confusion, mistake, or deception as to the source, origin, sponsorship, or approval of Mr.

Childress' products or services." (03/22/2024 Trial Tr., ECF No. 707, PageID.26817.)  The jury is "presumed to [have] follow[ed] the court's instructions." *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009).  The Court can therefore safely conclude that when the jury found in favor of Dassault on its trademark infringement claim, the jury first necessarily found that Childress used the CATIA mark in a manner that was likely to cause confusion, mistake, or deception as to the source, origin, sponsorship, or approval of Childress' products or services.  Simply put, contrary to Childress' contention, the jury did find a likelihood of confusion even though it was not asked to answer a specific question concerning that issue on the verdict form.

## D

The Court next addresses Childress' argument that the Court gave an erroneous jury instruction on his acquiescence defense to Dassault's trademark infringement claim and then compounded that error by making another mistake concerning his acquiescence defense on the verdict form.  Childress says that those mistakes prevented the jury from fully and fairly considering his acquiescence defense.  But he has failed to show that these purported errors (which the Court

describes in more detail below) affected his substantial rights in any way.  He is therefore not entitled to relief based upon those claimed errors.[5]

## 1

Before turning to the substance of Childress' arguments, it is helpful to first answer two fundamental questions about the acquiescence defense.  What is it?  And who decides whether it has been established – a judge or a jury?

Acquiescence is an "affirmative and equitable defense[]" to a claim of trademark infringement. *Times Mirror Mags., Inc. v. Field & Stream Licenses Co.*, 294 F.3d 383, 395 (2d Cir. 2002).  Where the defense is established, it "may estop a trademark owner from obtaining injunctive and monetary remedies for trademark infringement." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016).

---

[5] The Court held a hearing on Childress' motion for reconsideration limited to particular questions that the Court had on Childress' acquiescence defense. (*See* Order, ECF No. 736.)  The Court held the hearing virtually in order to accommodate Childress and save him the expense of travelling to Michigan to attend the hearing in person.  Following the hearing, Childress filed a motion to resume the hearing. (*See* Childress Mot., ECF No.741.)  In that motion, Childress argues that he became disconnected from the hearing and was not able to fully participate in the hearing. (*See id.*)  The Court's review of the video recording of the hearing reveals that Childress may have been disconnected at the very end of the hearing after he was fully heard on his acquiescence defense and after the presentation of argument concluded.  Thus, it does not appear that Childress missed any portion of the hearing germane to the Court's ruling.  Moreover, the Court granted Childress' motion to file a supplemental brief that he filed after the conclusion of the hearing (*see supra* note 1), so the Court is persuaded that Childress has been fully heard on all of the points raised in his motion for reconsideration.  The Court therefore **DENIES** Childress' motion to resume the hearing.

Acquiescence "requires a 'finding of conduct on the plaintiff's part that amounted to an assurance to the defendant, express or implied, that plaintiff would not assert his trademark rights against the defendant.'" *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 569 (6th Cir. 2000) (quoting *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991)). *See also* 4 McCarthy on Trademarks & Unfair Competition § 31:41 (5th ed.) (explaining that acquiescence involves "cases where the trademark owner, by *affirmative* word or deed, conveys its implied consent to another" to use a trademark) (emphasis in original).   The Seventh Circuit has helpfully summarized the acquiescence defense as follows:

> Generally speaking, acquiescence is an equitable doctrine that permits the court to deny relief in an action for trademark infringement if the evidence shows that the owner of the mark has, through his words or conduct, conveyed his consent to the defendant's use of the mark. The defense prevents the trademark owner from impliedly permitting another's use of his mark and then attempting to enjoin that use *after* the junior user has invested substantial resources to develop the mark's goodwill.

*Hyson USA*, 821 F.3d at 940 (internal citations omitted) (emphasis in original).

Because acquiescence is an equitable defense, it "is a matter for the court to decide, not the jury." *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 343 (8th Cir. 2018) (quoting *Smith v. World Ins. Co.*, 38 F.3d 1456, 1462 (8th Cir. 1994)) (rejecting argument that acquiescence defense should have been submitted to the jury). *See also Chicago Mercantile Exch., Inc. v. ICE Clear*

*US, Inc.*, No. 18 C 1376, 2020 WL 1905760, at *5 (N.D. Ill. Apr. 17, 2020) (holding that "[r]egardless of how it is framed, the application of [an acquiescence] defense is an issue for the Court; it is not an issue for the jury."); *Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, No. 12 C 9686, 2016 WL 723135, at *2 (N.D. Ill. Feb. 24, 2016) ("The application of [the acquiescence defense] is within the discretion of the Court and is not an issue for the jury to decide.").[6]  Indeed, the civil pattern jury instructions for at least two circuits omit an instruction for acquiescence because it is an "issue[] for the court, not the jury." Federal Civil Jury Instructions of the Seventh Circuit, § 13.5.3 (2017); Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit, § 21.63 (2023) (same).

But that is not to say that a jury never has any role to play with respect to an acquiescence defense.  Where an acquiescence defense shares "common" factual questions with a legal claim presented in an action, the jury "should" decide those questions, and the jury's verdict "operates as a finding of fact binding on the trial court in its determination" of the acquiescence defense. *Moltan Co. v. Eagle-Picher, Indus., Inc.*, 55 F.3d 1171, 1174–75 (6th Cir. 1995) (explaining procedure generally for resolution of overlapping equitable and legal issues).  Likewise, where there are disputed questions of fact underlying an equitable defense like acquiescence, a jury,

---

[6] *See also Bonner Farms, Ltd. v. Fritz*, 355 F. App'x 10, 18 (6th Cir. 2009) ("[T]he determination of equitable defenses and equitable remedies is a matter for the court to decide, not the jury") (quoting *Smith*, 38 F.3d at 1462)).

rather than the court, should resolve those disputes, and the court should then incorporate the jury's factual findings into its resolution of the defense. *See DayCab Co., Inc. v. Prairie Tech., LLC*, 67 F.4th 837, 856 (6th Cir. 2023) (remanding to district court to rule on equitable defense of laches after jury resolved factual disputes underlying the defense). *But see* 5 McCarthy on Trademarks & Unfair Competition § 32:127 (5th ed.) ("Deciding the factual questions and validity of an equitable defense is for the judge alone.").

2

With this legal background in mind, the Court turns to the relevant procedural history of Childress' acquiescence defense.  He first raised the defense in his Answer. (*See* Ans., ECF No. 91, PageID.1062.)  He then moved for summary judgment in his favor on the defense. (*See* Childress Mot., ECF No. 194.)  In that motion, he explained that the basis of the defense was that Dassault allegedly acquiesced to his use of the CATIA trademark when it placed advertisements on his business's website.  The URL address for that website contained the term CATIA (it was http://www.practicalcatia.com), and the website reflected that the name of Childress' business included the term CATIA (it was "Keith Childress' Practical CATIA Training"). (*See id.*, PageID.3033-3034.)   Childress contended that Dassault "impliedly gave its 'active consent'" to his use of the CATIA mark when Dassault placed advertisements on his website with the knowledge that his business name and

29

the website URL used the mark CATIA. (*Id.*)  The judge who was then presiding over the action denied Childress' motion and declined to enter judgment as a matter of law in his favor on his acquiescence defense. (*See* Op. and Order, ECF No. 275.) That judge concluded that the defense could not be resolved on summary judgment because there were disputed questions of fact underlying the defense, and those questions could be properly resolved only after a trial. (*See id*., PageID.5613-5614.)

This Court (following remand) first addressed the acquiescence defense with the parties at the Final Pre-Trial Conference.  During that conference, Childress' trial counsel noted that Childress had "a couple [of] equitable defenses" – including acquiescence  – "that would ordinarily be decided by the Court," and counsel wanted to know if the Court had a "suggest[ion for] dealing with [those defenses]." (2/28/2024 Conf. Tr., ECF No. 713, PageID.27082-27083.)  Counsel for both parties then agreed to a procedure under which the Court would (1) submit any "factual" disputes underlying the equitable defenses to the jury and (2) then rule on the equitable defenses "based on the factual findings of the jury, after the trial has been [completed]." (*Id.*, PageID.27085-27086.)

However, the parties' subsequent pre-trial submissions did not conform to their agreement that the jury would decide only disputed questions of fact underlying the equitable defenses.  Indeed, the parties did not submit any proposed factual questions related to the equitable defenses for the jury to answer.  Instead, the parties

proposed jury instructions on the equitable defenses (including acquiescence) that called for the jury to rule on the defenses – and to do so without making specific factual findings. (*See* Dassault's Proposed Instructions, ECF No. 740, PageID.31965; Childress' Proposed Instructions, *id.*, PageID.32055.) Likewise, both parties proposed verdict forms that did not ask the jury to make any factual findings in connection with Childress' equitable defenses. (*See* Dassault's Proposed Verdict Form, *id.*, PageID.32078; Childress' Proposed Verdict Form, *id.*, PageID.32085.)

After the Court received and reviewed each side's proposed jury instructions and proposed verdict forms, the Court spent "several hours" meeting in chambers with counsel for both parties in an effort to narrow the areas of dispute and arrive at final jury instructions and a final verdict form. (03/21/2024 Trial Tr., ECF No. 716, PageID.25706; *see also* 03/22/2024 Trial Tr., ECF No. 707, PageID.26718-26720.) The Court finalized the jury instructions and verdict form on the last day of the trial.

With respect to Childress' acquiescence defense to Dassault's trademark infringement claim, the Court instructed the jury as follows:

> Mr. Childress further asserts a defense of acquiescence. Acquiescence requires a finding of conduct on Dassault's part that amounted to an assurance to Mr. Childress, express or implied, that Dassault would not assert its rights against Mr. Childress. To prove his defense of acquiescence, Mr. Childress must show:

> One, an unreasonable delay by Dassault in enforcing its trademark rights against Childress.
>
> Two, prejudice to Mr. Childress as a result of the delay.
>
> And, three, a showing by words or affirmative conduct by Dassault that Dassault consented to Childress's use of the mark.
>
> A finding of acquiescence bars damages for acts of infringement that occurred after the acquiescence. Thus, if you find for Mr. Childress on his acquiescence defense, you may only award damages to Dassault to compensate for acts of infringement that occurred prior to the acquiescence.

(03/22/2024 Trial Tr., ECF No. 707, PageID.26823-26824.)  Childress did not object to that instruction.

The portion of the verdict form addressing Dassault's trademark infringement claim was structured as follows.  The jury was first asked if it found "by a preponderance of evidence that Mr. Childress infringed Dassault's trademark rights in its CATIA mark." (Verdict Form, ECF No. 667, PageID.25047.)  The form then instructed the jury that if it found evidence of infringement, it should proceed to the next question on the verdict form.  That question asked, among other things, "[d]o you find by a preponderance of the evidence that Mr. Childress has established" that "Dassault's trademark claim [was] barred by the doctrine of 'fair use?'" (*Id.*)  The form next told the jury that if it found that Dassault's trademark claim was barred by the fair use doctrine, then the jury should not answer any of the additional questions

related to trademark infringement.  Those questions included whether Dassault's

damages should be limited based upon Childress' acquiescence defense. (*See id*.)

At the conclusion of deliberations, the jury found that Childress did infringe

on Dassault's trademark. (*See id.*)  The jury then moved to the question of fair use

and found in Childress' favor on that defense. (*See id.*)  As directed by the verdict

form, the jury then did not answer any of the remaining questions concerning

trademark infringement, including the question about Childress' acquiescence

defense. (*See id.*)  The portion of the verdict form related to trademark infringement,

as completed by the jury, looked like this:

(12) Do you find by a preponderance of evidence that Mr. Childress infringed Dassault's trademark rights in its CATIA mark?

YES ✓   NO ___

If you answer "YES" to question (12), then please proceed to next question; If you answer "NO" to question (12), then go to question (19).

(13) Do you find by a preponderance of the evidence that Mr. Childress has established one or more of the following affirmative defenses:

   a. Dassault's trademark claim is barred by the doctrine of "fair use"?

   YES ✓   NO ___

   b. Dassault's trademark claim is barred by the doctrine of unclean hands?

   YES ___   NO ✓

If you answered "YES" to any of the sub-parts of question (13), then go to number (19); If you answered "NO" to all subparts of question (13), go to the next question.

(14) what amount do you award in damages for the time period of 2000-2006 for trademark infringement?

   $_____

(15) Do you find by a preponderance of the evidence that Mr. Childress has proven that Dassault's trademark infringement damages should be limited under the doctrine of laches?

YES ___   NO ___

(16) Do you find by a preponderance of the evidence that Mr. Childress has proven that Dassault's trademark infringement damages should be limited under the doctrine of acquiescence?

YES ___   NO ___

(17) If you answered yes to Question 16, what amount do you award in damages that occurred prior to acquiescence?

   $_____

(18) Do you find by a preponderance of evidence that Mr. Childress' trademark infringement was willful?

YES ___   NO ___

(*Id.*)  Childress did not object to portion of the verdict form concerning trademark infringement.

### 3

Childress argues that two errors – one in the verdict form and one in the jury instructions – "prevented" the jury from reaching a verdict on his acquiescence defense. (Childress Mot., ECF No. 732, PageID.29327.)  First, Childress contends that the structure of the verdict form erroneously led the jury to skip over that defense.  He points out that the verdict form instructed the jury not to answer the question concerning acquiescence if the jury first found that Dassault's trademark claim was barred by the fair use doctrine.  He then notes the jury did find in his favor on his fair use defense and then, in accordance with the jury instructions, skipped the question concerning his acquiescence defense.  He says that he was thereby deprived of a jury finding on that separate and independent defense.  That deprivation matters now, he says, because (as noted above) the Court granted Dassault's post-trial motion for judgment in its favor on Childress' fair use defense, and that ruling exposes him to liability (and injunctive relief) for trademark infringement.  He insists that he will now face consequences for trademark infringement without the jury ever having considered his acquiescence defense.

Second, Childress says that the jury instruction on acquiescence did not accurately state the law.  As noted above, that instruction told the jury that the

acquiescence defense, if viable, would limit Dassault's damages; the jury was not told that a finding of acquiescence could bar Dassault's trademark infringement claim altogether.   Childress argues that the instruction was erroneous because "[a]cquiescence <u>bars</u> a trademark holder from bringing suit against an alleged infringer." (Childress Reply, ECF No. 734, PageID.31681-31682; emphasis in original).

**4**

Childress is not entitled to relief based upon the alleged errors he identifies because the claimed errors did not affect his "substantial rights." Fed. R. Civ. P. 51(d)(2).[7] As noted above, acquiescence "is a matter for the court to decide, not the jury," *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 343 (8th Cir. 2018), and thus Childress had no right to have the jury make the ultimate decision as to whether he should have prevailed on that defense. Accordingly, his substantial rights were not affected when the jury did not answer the question asking it to determine whether Childress had established that defense. Moreover, Childress still has an opportunity to present his acquiescence defense to the Court in full when Dassault moves for injunctive relief barring his use of the CATIA mark.   At that time, the Court will consider the defense and determine

---

[7] For the purposes of this analysis, the Court assumes, *without deciding*, that Childress has identified errors in the acquiescence instruction and the verdict form.

whether the evidence presented at trial establishes the defense.  Because Childress retains the ability to present his acquiescence defense to the Court – the proper decision-maker with respect to the defense – the claimed errors on the verdict form and jury instructions did not cause him unfair prejudice and do not entitle him to any relief.

Childress counters that even if he did not have a right to have the jury rule on the ultimate viability of his acquiescence defense, he had a right to have the jury resolve the factual disputes underlying the defense, and he says that the errors described above deprived him of that right. (*See* Childress Mot., ECF No. 743, PageID.32198.)  There are two problems with this argument.  First, the Court's instruction to the jury to skip the question concerning the acquiescence defense did not cause the lack of factual findings regarding that defense.  As noted above, the verdict form (to which Childress did not object) did not ask the jury to make any particular factual findings related to the acquiescence defense; instead, it asked the jury to make a final decision as to whether Childress had established the defense.[8] (*See* Verdict Form, ECF No. 667, PageID.25047.)  Thus, even if (1) the Court had instructed the jury that it *should* answer the acquiescence question on the verdict

---

[8] It bears repeating that Childress never proposed a verdict form that asked the jury to make factual findings related to his acquiescence defense and that he never asked the Court to have the jury make any particular factual findings with respect to the defense.

form and (2) the jury had done so, the jury still would not have made any specific factual findings with respect to that defense.[9]  The purportedly erroneous instruction therefore did not deprive Childress of any factual findings that he could cite to support his acquiescence defense.

Second, Childress has failed to identify any disputes of material fact in the trial evidence related to his acquiescence defense that the jury could properly have been called upon to resolve.  He says only that the jury should have resolved certain unidentified factual disputes.  That is not enough.

Moreover (and in any event), the key facts related to the acquiescence defense do not appear to have been meaningfully in dispute at trial.[10]  As noted above, the defense was that Dassault acquiesced in Childress' use of the CATIA mark by advertising on his website during years in which (1) he used the mark in the name

---

[9] Childress seems to suggest that the question on the verdict form concerning acquiescence did direct the jury "to decide factual issues" relating to his acquiescence defense. (Childress Reply, ECF No. 743, PageID.32198.)  It did not. Instead, as noted in text above, the verdict form directed the jury to decide the ultimate question of whether Childress established his acquiescence defense.

[10] As noted above, long before the trial, one of the judges who previously presided over this case denied Childress' motion for summary judgment on his acquiescence defense on the ground that there were material factual disputes underlying the defense. (*See* Op. and Order, ECF No. 275, PageID.5613-5614.)  However, Childress has failed to show that the actual evidence presented at trial with respect to the defense was meaningfully in dispute.  Because Childress has failed to identify any factual disputes concerning acquiescence in the trial evidence, there is no inconsistency between the ruling of the prior judge (based upon the summary judgment record) and the conclusion by this Court that it may decide the acquiescence defense.

of his business (as reflected in the name of the website itself) and (2) he used the mark in the URL for the website.  Notably, Dassault did not take issue with those facts at trial.  Instead, Dassault contended that Childress' acquiescence defense failed on "the law" – *i.e.*, that as a *legal* proposition, the facts identified by Childress did not rise to the level of acquiescence. (03/22/2024 Trial Tr., ECF No. 707, PageID.26860-26862.)  Under these circumstances, Childress has failed to show that he was deprived of the right to factual findings by the jury in a manner that affected his substantial rights.

Childress responds that he has shown plain error in the acquiescence instruction under the standard set forth in *Reynolds v. Green*, 184 F.3d 589, 594 (6th Cir. 1999).  In *Reynolds*, the Sixth Circuit "agree[d]" with the Second Circuit "that an instruction constitutes plain error when it 'misapplies the law as to a core issue in the case resulting in the substantial prejudice of the party challenging the instruction on appeal.'" *Id.* at 595 (quoting *Latsis v. Chandris, Inc.*, 20 F.3d 45, 50 (2d Cir. 1994), *aff'd* 515 U.S. 347 (1995)).  But for all of the reasons explained above, Childress has not shown that any error in the acquiescence instruction "result[ed] in substantial prejudice" to him.  Thus, he has not satisfied the plain error test from *Reynolds*.

## E

Childress next raises a challenge to the Court's handling of his laches defense that mirrors one of his challenges to the Court's treatment of his acquiescence

defense.  He says that the structure of the verdict form erroneously led the jury to skip over his laches defense – in the same way it skipped over his acquiescence defense – once the jury found in his favor on his fair use defense.  And he says that that error prevented the jury from considering his laches defense.

Childress has failed to show plain error with respect to the treatment of his laches defense on the verdict form for the same reasons (explained above) that he failed to show plain error with respect to his acquiescence defense.   Like acquiescence, laches is an equitable defense that is to be decided by the Court. *See, e.g.*, *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 363 (6th Cir. 1985) (identifying laches as an equitable defense in trademark dispute); *Roederer v. J. Garcia Carrion, S.A.*, 569 F.3d 855, 858 (8th Cir. 2009) (explaining that "[l]aches is an equitable defense to an action to enforce a trademark"). Thus, Childress had no right to have the jury determine whether he should have prevailed on that defense. And, as with his acquiescence defense, Childress has failed to identify any factual disputes in the trial evidence concerning laches that should have been resolved by the jury.

Finally, given the procedural posture of this case, it is clear that the lack of a jury verdict on Childress' laches defense did not cause him any prejudice. "Laches only bars damages that occurred before the filing date of the lawsuit.  It does not prevent plaintiff from obtaining injunctive relief or post-filing damages."

*Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 412 (6th Cir. 2002).  And here, Dassault has disclaimed any interest in seeking any monetary damages on its trademark infringement claim. (*See* Dassault Reply, ECF No. 671, PageID.25065.) Because laches is only a defense to a claim for past trademark infringement damages and because Dassault is not seeking such damages, any error in the verdict from related to the laches defense did not affect Childress' substantial rights.

### F

Childress next asserts that the jury was not permitted to consider his estoppel defense because the Court did not give an estoppel instruction and because the verdict form did not reference that defense. (*See* Childress Mot., ECF No. 732, PageID.29330.)   Childress has failed to show that the omission of an estoppel instruction was plain error.

### 1

Childress cannot show plain error with respect to the absence of an estoppel instruction and jury question for the same reasons that he cannot show such an error with respect to his acquiescence and laches defenses.  Like those defenses, estoppel is a "traditional equitable defense[]" to a claim of trademark infringement, *U.S. Jaycees v. Cedar Rapids Jaycees*, 794 F.2d 379, 382 (8th Cir. 1986), and like those other defenses, it should be, and will be, presented to and decided by the Court in connection with Childress' opposition to Dassault's request for injunctive relief.

Moreover, Childress has not identified any material disputes of fact with respect to the defense that should have been decided by the jury. For these reasons, Childress has failed to show that the absence of an estoppel instruction and/or question on the verdict form caused him substantial prejudice.

The conduct of Childress' trial counsel confirms that the absence of an estoppel instruction and question on the verdict form did not prejudice Childress. More specifically, counsel chose to focus on other, closely-related defenses and did not press the estoppel defense. For instance, he did not move for a directed verdict on the estoppel defense even though he did make such a motion on the similar acquiescence and laches defenses. (*See* 03/21/2024 Trial Tr., ECF No. 716, PageID.27564-27572.) And he did not mention estoppel in his closing argument. (*See* 03/22/2024 Trial Tr., ECF No. 707, PageID.26867-26894.) Likewise, he did not object to the lack of an estoppel instruction when the Court, after reading the instructions to the jury, asked on two separate occasions if he had any objections. (*See id.*, PageID.26865-26866, 26922-26923.) Finally, he did not raise the lack of an estoppel instruction in any of his post-trial motions. These circumstances strongly suggest that Childress' own trial attorney did not believe that the lack of an estoppel instruction and/or a question concerning estoppel on the verdict form unduly interfered with his ability to fully and fairly present Childress' case. Counsel reasonably could have concluded that the estoppel defense was unnecessary because

41

the concepts underlying that defense were sufficiently covered by Childress' acquiescence defense.  In fact, some courts refer to the acquiescence defense as "estoppel by acquiescence." *PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 520 F.3d 109, 115 (2d Cir. 2008).

For all of these reasons, the fact that the Court did not give an estoppel instruction and/or include an estoppel question on the verdict form is not plain error.

## 2

Childress counters that nefarious conduct by Dassault led to the omission of the estoppel instruction, and he insists that the Court should allow him to conduct discovery into, and hold a hearing to explore, the claimed irregularities. (*See* Childress Mot., ECF No. 748.)  More specifically, Childress contends that there is strong reason to believe that at the eleventh hour, one of Dassault's attorneys secretly removed the estoppel instruction from the parties' approved jury instructions and then submitted the instructions to the Court. (*See id.*)  As support for his position, Childress cites email exchanges between his trial counsel and Dassault's attorneys that, he claims, reveal Dassault's trickery.  For two reasons, the Court declines to allow further proceedings to investigate how the estoppel instruction came to be removed from the instructions.

First, the Court finds it significant that Childress' trial counsel has never suggested to the Court that Dassault's counsel committed misconduct in connection

with the omission of the estoppel instruction.  Indeed, if Dassault's attorneys had pulled a "fast one" on Childress' trial counsel by omitting the estoppel instruction from the jury instructions provided to the Court, Childress' attorneys surely would have brought that fact to the Court's attention.  But as noted above, they did not object when the instructions were read to the jury without an estoppel instruction and did not raise this issue in any post-trial motions.  And Childress presents no evidence that his trial attorneys have ever told him that Dassault committed misconduct as he now alleges.  The lack of a clear statement from Childress' trial counsel that Dassault committed misconduct as now claimed by Childress is strong evidence that Childress' attorneys were not deceived by Dassault's attorneys and that further inquiry into this issue is neither necessary nor appropriate.

Second, for all of the reasons explained above, the lack of an estoppel instruction made no difference here because Childress has failed to identify any disputed facts underlying the defense that the jury should have been called upon to decide and because Childress still has a full opportunity to present the defense to the Court in opposition to Dassault's request for injunctive relief on its trademark infringement claim.  Under these circumstances, there is no need or cause to devote time and resources into exploring further how and why the estoppel instruction was omitted.

For all of these reasons, the Court **DENIES** Childress' motion for leave to file subpoenas related to the estoppel instruction issue. (*See* Childress Mot., ECF No. 748.)

## IV

The Court next turns to Childress' argument that the Court erred when it addressed a question posed by the jury during deliberations.  The facts underlying that contention are as follows.  The jury posed three questions to the Court in writing at 11:05 a.m. on March 25, 2025, two of which are relevant here.  Those questions were as follows: (1) "What is the date claimed Dassault received the tip," and (2) "When was the lawsuit filed?" (03/25/2024 Trial Tr., ECF No. 726, PageID.29059-29060.)

The questions appear to be related to Childress' statute of limitations and laches defenses to Dassault's copyright infringement claims.  In the limitations defense, Childress contended that Dassault's copyright claims were time-barred under the applicable three-year statute of limitations because in January 2005, Dassault received a tip putting it on notice of his (Childress') alleged copyright infringement, but Dassault waited until 2009 to file this action asserting the copyright infringement claims. In the laches defense, Childress asserted that Dassault unreasonably delayed in filing this action after receiving the tip.

After the Court received the questions from the jury, it consulted with counsel for both parties concerning possible answers to the questions.  Dassault's counsel suggested that the Court not give the jurors a date in response to the questions and, instead, tell them to "rely on their memory and notes." (*Id*., PageID.29061.) Childress' trial counsel said "I don't think those dates are in dispute, and if that's the case, then I suggest just giving them" to the jury. (*Id*., PageID.29060.)  He later reiterated that his "position, for the record, is [that] we ought to give them the exact dates that aren't in dispute." (*Id*., PageID.29062.)

After hearing from the attorneys, the Court acknowledged that at least some of the dates requested by the jury were not in dispute, but the Court concluded that the "safest thing to do is just to tell them to use their recollection of the evidence." (*Id.*)  The Court then brought the jury back into the courtroom and instructed the jurors "to use your collective memories of the evidence and make your best efforts, based on your collective memories, to reconstruct the answers for yourself, based on the evidence." (*Id.*, PageID.29064.)

The Court then excused the jury and had some additional discussion with counsel as to whether it should tell the jurors the date on which Dassault filed this action.  Counsel for both parties ultimately agreed that the Court should tell the jury that date because that date was the subject of a formal stipulation between the parties and because the parties, in reliance on that stipulation, may not have presented

specific evidence of that date at trial. (*See id.*, PageID.29065-29066.)  The Court then brought the jurors into the courtroom again and told them that it would give them the date on which the lawsuit was filed because the parties had stipulated to that date and had not presented evidence of the date during trial. (*See id.*, PageID.29066-29067.)  The Court told the jurors that Dassault "filed its Complaint in this action on February 12th, 2009." (*Id.*, PageID.29067.)

Childress contends that the Court should have given the jury the date of the tip in response to its request for that date because "[t]he information the jury sought was part of the trial record" and "[w]ithout the requested information, the jury was unable to establish the dates essential to Childress' statute of limitation (and laches) defense." (Childress Mot., ECF No. 732, PageID.29837-29838.)  Childress adds that the Court compounded its error by not giving the jury the trial exhibits – which included an email through which the tip at issue was communicated to Dassault – either at the beginning of its deliberations or in response to its questions.[11] (*See id.*)

---

[11] It is not clear from the record that, as Childress claims, the Court did not send the exhibits into the jury room at the beginning of deliberations.  As Childress correctly notes, one portion of the jury instructions suggested that the Court would provide the jury with the exhibits only upon request.  However, shortly after giving that instruction, the Court told the jurors that its case manager would try to have the exhibits brought into the jury room. (*See* 03/22/2024 Trial Tr., ECF No. 707, PageID.26922.)  The Court does not have an independent recollection as to whether its case manager, in fact, sent the exhibits into the jury room.  For purposes of this motion, the Court will assume that it did not send the exhibits into the jury room. For the reasons explained below, that was not an error warranting a new trial.

Childress suggests that the jurors could have answered their own question concerning the date of the tip if the Court had given them the trial exhibits. Childress has not shown that he is entitled to relief based upon the Court's response to the jury's question concerning the date of the tip or the Court's handling of the exhibits.

District courts have "considerable discretion" in responding to jury questions, *United States v. Phillips*, 872 F.3d 803, 807 (6th Cir. 2017), and Childress has not shown that the Court's answers to the jury's question seeking the date of the tip constituted an abuse of that considerable discretion. Simply put, it was Childress' burden to clearly communicate the date of the tip to the jury, not the Court's job to remedy his failure to do so after the close of proofs and during deliberations. Moreover, the jury had other ways to determine the date of the tip. As Childress notes, that date was reflected in one of the exhibits that was admitted at trial (*see* Childress Mot., ECF No. 732, PageID.29337-29338), and the jury could have, but did not, request to review the exhibits (as the Court instructed the jury that it could do, *see* 03/22/2024 Trial Tr., ECF No. 707, PageID.26922-26923). Under these circumstances, the Court's refusal to answer the jury's question concerning the date of the tip is not an error warranting a new trial. Notably, Childress has not cited any decision in which any federal court has found that a district court committed reversible error by declining to answer a jury question under circumstances like those presented here.

Nor did the Court err with respect to the handling of the exhibits.  As noted above, the Court instructed the jury that it could review the exhibits upon request,[12] and the jury did not ask to see the exhibits.  The Court was under no obligation to interpret the jury's question about the date of the tip as a request to review exhibits.  Nor was the Court obligated to first tell the jurors that the answer to their question could be found in one of the exhibits and then send the unrequested exhibits back to them.  Again, it was the job of Childress to clearly convey the date of the tip to the jury so that the jury could evaluate his defenses.  Having failed to do so, Childress is not now entitled to a new trial on the ground that the Court did not send the exhibits back to the jury in the absence of a request to do so.

## V

Childress next argues that the Court erred when it granted Dassault's post-trial motion for a judgment as a matter of law on Childress' fair use defense to Dassault's trademark infringement claim.  As noted above, the jury found in favor of Childress on that defense at trial.  Following trial, Dassault moved for judgment as a matter of law in its favor on that defense (*see* Dassault Mot., ECF No. 663), and the Court granted that motion (*see* Order, ECF No. 718).  Childress now says that the Court

---

[12] As Childress acknowledges, that instruction and approach – *i.e.*, sending the exhibits into the jury room only upon request – are consistent with the Sixth Circuit practice. (*See* Childress Reply, ECF No. 734, PageID.31684 n.11, quoting Sixth Circuit Criminal Pattern Jury Instruction 8.01(4).)

should not have entertained, much less granted, Dassault's motion attacking his fair use defense because Dassault waived its arguments attacking that defense when, following the entry of judgment in the first trial, it failed to raise those arguments in its appeal to the Sixth Circuit. The Court disagrees.

As an initial matter, Childress has forfeited his waiver argument because he did not make the argument when Dassault moved for judgment as a matter of law on the fair use defense. *See Howe v. City of Akron*, 801 F.3d 718, 743 (6th Cir. 2015) (holding that party "forfeited any arguments" that were not previously raised). Accordingly, the Court reviews the argument under the demanding plain error standard. *See id.* (holding that, "absent plain error," court would not review any arguments that were forfeited because they had not been previously raised).

Childress has failed to show that the Court committed any error, much less a plain one, by entertaining and granting Dassault's motion attacking his fair use defense. The sole decision cited by Childress in support of his waiver argument, *JGR, Inc. v. Thomasville, Furniture Indus., Inc.*, 550 F.3d 529 (6th Cir. 2008), shows why that argument fails. In *JGR, Inc.*, the Sixth Circuit explained that "[a] party that fails to appeal an issue 'waive[s] his right to raise the issue before the district court on remand or before this court on appeal after remand. The law-of-the case doctrine bars challenges *to a decision made at a previous stage of litigation* which could have

been challenged in a prior appeal, but were not.'" *Id*. at 532 (emphasis added) (cleaned up) (quoting *United States v. Adesida,* 129 F.3d 846, 850 (6th Cir.1997)).

Here, Childress does not identify any *decision concerning his fair use defense* that was made by either of the former judges who presided over this action or by the jury prior to the appeal to the Sixth Circuit.  He seems to suggest that the judge who presided over the first trial rendered such a decision when, following that trial, she denied a motion by Dassault for judgment as a matter of law. (*See* Childress Mot., ECF No. 732, PageID.29341-29343.)  But that is not correct. The former presiding judge did not address Childress' fair use defense when she denied Dassault's post-trial motion. (*See* Op. and Order, ECF No. 463, PageID.13184-13187.)  She had no reason to reach that defense – or any of Childress' defenses – in her ruling because she upheld the jury's finding that Childress did not infringe on Dassault's trademark in the first place. (*See id*.)   Because the prior presiding judge never rendered any decision concerning the viability of Childress' fair use defense, Dassault's failure to attack that defense on appeal did not result in a waiver of its right to attack that defense in the re-trial before this Court.

Finally, Childress says that the Court must rule that Dassault waived its attack on his fair use defense in order to be consistent with its earlier ruling that Childress waived the right to make certain arguments before the Court because he had not raised them on appeal. (*See* Childress Reply, ECF No. 734, PageID.31687-31688.)

The Court disagrees.  The Court previously held that Childress waived the right to file certain motions to compel discovery because he had previously filed a motion to compel the production of the same materials, the former presiding judge had denied the motions, and Childress did not appeal those denials to the Sixth Circuit. (*See* 10/26/2021 Hr'g Tr., ECF No. 558, PageID.17182-17185.)  As this history makes clear, the Court enforced a waiver against Childress because he failed to appeal decisions that had been rendered against him prior to his appeal.  In sharp contrast, Childress is now trying to enforce the waiver doctrine against Dassault under circumstances in which Dassault did not fail to appeal adverse rulings.  The difference in circumstances warrants a different result.

For all of these reasons, the Court rejects Childress' argument that Dassault waived its right to challenge his fair use defense in its motion for judgment as a matter of law.

## VI

The Court next turns to Childress' challenge to the Court's determination – announced orally on the record but not yet memorialized in an order – that Dassault is entitled to an award of attorneys' fees because it prevailed on its copyright infringement claim.  He questions how the Court could conclude that Dassault is entitled to such an award when the district judge who presided over the first trial in this action declined to award fees to Dassault even though Dassault prevailed on its

copyright infringement claim in that first trial as well. (*See* Childress Mot., ECF No. 732, PageID.29339-29341.)

Childress' argument fails to account for the significant difference between the copyright infringement verdict in the first trial and the verdict in the second trial before this Court. The first jury found that Childress' infringement was not willful. In sharp contrast, the second trial found that his infringement *was* willful. And willful infringement weighs strongly in favor of an award of attorneys' fees. *See*, *e.g.*, *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F.Supp.3d 606, 650 (S.D. N.Y. 2018) ("Awarding [attorneys'] fees is also appropriate based on the jury's finding of willful infringement for the works at issue."). That explains why the prior ruling on attorneys' fees does not preclude an award of fees here.

## VII

Finally, the Court addresses Childress' motion for an evidentiary hearing. (*See* Childress Mot., ECF No. 742.) In that motion, Childress says that "pursuant to the Court's suggestion during [a] November 21, 2024 hearing," the Court should convene an evidentiary hearing "to allow Mr. Childress to question, under oath, the parties responsible for drafting the erroneous jury instructions and jury verdict form to try to get to the truth regarding the irregularities cited herein that violated Mr. Childress' right to a fair trial." (*Id.*, PageID.32108, 32122; cleaned up; emphasis removed.)

What Childress asks for, however, is not what the Court actually "suggest[ed]." Childress is correct that the Court did offer him to the opportunity to have an evidentiary hearing, but that offer was for a limited hearing on one particular issue – whether his trial counsel felt the need to truncate Childress' testimony and/or Childress' case based on comments that the Court had made during trial. (*See* 11/21/2014 Hr'g Tr., ECF No. 728, PageID.29184-29191.) Thus, Childress' contention that the Court offered to hold an evidentiary hearing to broadly explore the conduct and decisions made by his trial counsel and opposing counsel is not correct.

The Court is not persuaded that it is necessary or appropriate to conduct an evidentiary hearing concerning any of the issues related to the jury instructions and verdict form that Childress proposes to explore. For all of the reasons explained throughout this Order, the Court concludes that the issues raised by Childress are properly resolved on the basis of the current record. And regardless of why any instructions on Childress' defenses may have been omitted, he may still present those defenses to the Court for consideration in connection with Dassault's request for an injunction. Moreover, an evidentiary hearing to explore alleged misconduct by Dassault's lawyers in connection with the jury instructions and verdict form is not warranted in light of the fact that, to this day, Childress' own trial lawyers have never

suggested to the Court that Dassault's counsel committed such misconduct.  The Court therefore **DENIES** Childress' motion for an evidentiary hearing.

## VIII

For all of the reasons explained above, **IT IS HEREBY ORDERED** that:

- Childress' motion for reconsideration (ECF No. 732) is **DENIED**;

- Childress' motion to resume hearing (ECF No. 741) is **DENIED**;

- Childress' motion for evidentiary hearing (ECF No. 742) is **DENIED**;

- Childress' motion for leave to file a supplemental brief (ECF No. 743) is **GRANTED**; and

- Childress' motion for leave to file subpoenas (ECF No. 748) is **DENIED**.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  July 17, 2025

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 17, 2025, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126