UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DASSAULT SYSTEMES, S.A.,

      Plaintiff,

v.

KEITH CHILDRESS,

      Defendant.

_____/

Case No. 09-cv-10534
Hon. Matthew F. Leitman

## ORDER GRANTING IN PART PLAINTIFF/COUNTER-DEFENDANT DASSAULT SYSTEMES, S.A.'s MOTION FOR RECOVERY OF ATTORNEY FEES (ECF No. 674)

More than fifteen years ago, Plaintiff/Counter-Defendant Dassault Systemes, S.A. ("Dassault") filed this action against Defendant/Counter-Plaintiff Keith Childress. (*See* Compl., ECF No. 1.)  Dassault alleged, among other things, that Childress infringed Dassault's copyright in a computer software program named CATIA V5. (*See id.* at ¶¶ 24-31, PageID.5-7.)  After more than a decade, multiple appeals to the United States Court of Appeals for the Sixth Circuit, over six-hundred filings, and two trials, a jury found that Childress had willfully infringed Dassault's copyright. (*See* Verdict Form, ECF No. 667, PageID.25044-25046.)  Dassault has now moved for an award of attorney fees. (*See* Mot., ECF No. 674.)

The Court has carefully reviewed Dassault's motion and Childress' opposition to the motion (*see* Resp., ECF No. 700), and it concludes that Dassault is entitled to

1

most, but not all, of the attorney fees it seeks.  Dassault's motion is therefore **GRANTED IN PART** as described below.

**I**

**A**

The Court has previously described the factual background and lengthy procedural history of this action in several earlier orders.  In brief, more than fifteen years ago, on February 12, 2009, Dassault filed this action against Childress.  Dassault's claims arose out of (1) Childress' use and alleged copying of CATIA V5 and (2) Childress' use of Dassault's CATIA trademark in the name of his software training business and website address. (*See generally* Compl., ECF No. 1.)  Dassault brought claims against Childress for copyright infringement and trademark infringement. (*See id*., PageID.5-7.)  Childress denied Dassault's allegations and filed counterclaims against Dassault. (*See* Ans. and Counterclaims, ECF No. 91.)  For much of this case, Childress represented himself *pro se*.

This case has previously been assigned to two other district judges and has had an extensive procedural history (as one may expect from a case that began more than a decade ago).  In December 2009, the first district judge assigned to this case entered a default judgment against Childress. (*See* Order, ECF No. 40; Judgment, ECF No. 60.)  Childress appealed that ruling to the Sixth Circuit, the first of multiple trips that the parties have taken to that appellate court.  The Sixth Circuit then set

2

aside that default. *See Dassault Systemes, S.A. v. Childress*, 663 F.3d 832 (6th Cir. 2011).  The parties thereafter returned to the district court and began discovery.  That process was contentious, and it resulted in the parties filing several discovery motions and taking additional appeals. (*See* Notice of Appeal, ECF No. 200; Sixth Cir. Orders, ECF No. 239, 277.)

Finally, after substantial summary judgment and pre-trial motion practice, the case was tried before a jury in March 2017.  The jury at that trial ruled for Dassault on its copyright infringement claim and in favor of Childress on Dassault's trademark infringement claim. (*See* Verdict Form, ECF No. 439.)  The jury further found that Childress' copyright infringement was not willful. (*See id.*, PageID.12324.)

After the first trial, Dassault filed a motion for attorney fees based on the victory on its copyright claims. (*See* Mot., ECF No. 450.)  In that motion, Dassault argued that it was entitled to $460,275.39 in fees. (*See id.*, PageID.12845.)  The district judge then assigned to the case denied Dassault's motion and declined to award Dassault any amount in fees. (*See* Order, ECF No. 463, PageID.13198-13200.)  She concluded that Childress had a "reasonable motivation to proceed with trial" and that "Childress [had] made a good faith effort to avoid infringement." (*Id.*, PageID.13199-13200.) Based on those conclusions, and her determination that

3

Childress had not unreasonably rejected Dassault's pre-trial settlement offer, the judge denied Dassault's motion for fees. (*See id.*)

Following that trial, both parties filed appeals in the Sixth Circuit. That court consolidated the appeals, vacated and reversed several orders of the district court, and ordered that the case be re-tried in its entirety. *See Dassault Systemes, SA v. Childress*, 828 F. App'x 229 (6th Cir. 2020).

On remand, the case was re-assigned to the undersigned. Counsel appeared on behalf of Childress for the first time, and additional motion practice followed, including an additional round of significant summary judgment briefing. The case was then tried a second time before a new jury in March of 2024. That trial involved Dassault's claims against Childress for copyright infringement and trademark infringement, on one hand, and Childress' counterclaim for abuse of process, on the other hand. Dassault told the jury that Childress had violated its copyright in two respects: first by using a "single node-lock license key" on multiple computers, and second by using a "software crack." (Verdict Form, ECF No. 667, PageID.24044-25046.) The jury in the March 2024 re-trial returned a verdict in favor of Dassault on both of its copyright infringement claims. (*See id.*) However, in a departure from the verdict at the first trial, the jury at the March 2024 re-trial found that Childress had willfully infringed Dassault's copyright. (*See id.*) The jury also found that Childress had infringed Dassault's trademark, but it concluded that Dassault's

4

trademark claim was barred by Childress' fair use defense.[1] (*See id.*, PageID.25046-25047.)  Finally, the jury found in Dassault's favor on Childress' abuse of process counterclaim. (*See id.*, PageID.25048.)

**B**

Now before the Court is Dassault's motion for attorney fees. (*See* Mot., ECF No. 674.)  Dassault argues that the Court should award those fees because, among other things, "the jury found Childress' infringement was willful," "Childress' litigation tactics … unnecessarily dr[ove] up the costs of litigation," and an award of fees would act as a "deter[rant] for future defendants." (*Id.*, PageID.25082.)  In total, Dassault asks for $2,401,833.54 in fees. (*See id.*, PageID.25105.)  Dassault supports that request with a detailed declaration from its lead counsel and a copy of its legal bills. (*See* ECF No. 674-2.)  The bills identify the working attorneys (by initials) and list the hours spent by each attorney on each task, but the description of services provided is redacted. (*See id.*, PageID.25171-25488.)  However, Dassault's lead attorney has provided a declaration in which he summarizes and describes the legal work performed. (*See id.*, PageID.25112-15133.)

Childress opposes Dassault's motion for fees. (*See* Resp., ECF No. 700.)  As explained in more detail below, Childress' primary argument in his response to

---

[1] After trial, Dassault filed a motion for judgment as a matter of law on Childress' fair use defense, and the Court granted that motion. (*See* Dassault Mot., ECF No. 663; Order, ECF No. 718.)

5

Dassault's fee request is that the request is barred by the "law of the case" doctrine. (*See id.*, PageID.26245.)  He further argues that the legal positions he took during this litigation were reasonable. (*See id.*)

While Childress argues at some length in his response to Dassault's motion that the Court should not award any fees at all, he does not spend much time contesting the amount of fees that Dassault requested.  Instead, he argues that if the Court is inclined to award fees, it should "schedule an evidentiary hearing to determine what work each of [Dassault's] attorneys billed for did" and whether the requested fees for that work was reasonable. (*Id.*, PageID.26252.)  He further contends in his response that the Court should require Dassault to provide him with unredacted copies of the bills from its attorneys. (*See id.*)

Importantly, Childress has now changed his mind with respect to his request for an evidentiary hearing and for unredacted copies of the bills from Dassault's attorneys.  During an on-the-record status conference that the Court held on February 13, 2026, Childress informed the Court that he no longer wants the Court to hold an evidentiary hearing on Dassault's attorney fee motion, and instead, he wants the Court to decide the motion on the basis of the current record – *i.e.*, the record that contains only the redacted copies of the legal bills and the summary of those bills provided by Dassault's counsel.  Childress said that he wanted to proceed in that fashion so that the Court can wrap up its work on this case as quickly and efficiently

6

as possible so that he can pursue a single, consolidated appeal (from both the judgment and the fee award). Dassault announced during that conference that it agrees with Childress' request that the Court decide its motion without any additional hearings and without any additional supplementation of the record. Based on the parties' agreement, the Court will resolve Dassault's motion without a hearing and without requiring Dassault to supplement the record with unredacted copies of its legal bills. *See* E.D. Mich. Local Rule 7.1(f)(2).

## II

### A

Section 505 of "[t]he Copyright Act permits an award of 'reasonable attorney's fees to the prevailing party' in a copyright infringement case." *Basley v. LFP, Inc.*, 691 F.3d 747, 772-73 (6th Cir. 2012) (quoting 17 U.S.C. § 505). "The grant of fees and costs 'is the rule rather than the exception and they should be awarded routinely.'" *Id.* (quoting *Bridgeport Music, Inc. v. WB Music Corp. (WB Music II)*, 520 F.3d 588, 592 (6th Cir. 2008)). Nonetheless, "[t]he decision to grant attorney's fees remains within the trial court's discretion." *Id.* That "discretion must be exercised in an evenhanded manner with respect to prevailing plaintiffs and prevailing defendants, and in a manner consistent with the primary purposes of the Copyright Act." *Bridgeport Music*, 520 F.3d at 592.

"There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the considerations [the Supreme Court has] identified." *Id.* (quoting *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 (1994)).  "Th[at] [c]ourt [has] approved several nonexclusive factors to weigh when considering a request for fees and costs, including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* (quoting *Fogerty*, 510 U.S. at 534).  "The factors need not all weigh in favor of an award in order to grant fees to a prevailing party and other factors may be considered." *Id.*  Indeed, rather than apply a rigid test or formulas to the fee question, the Court instead should look at the "totality of the circumstances" when determining whether to award fees. *Premier Dealer Servs., Inc. v. Allegiance Adm'rs, Inc., LLC*, 93 F.4th 985, 997 (6th Cir. 2024).

**B**

The Court concludes that Dassault is entitled to an award of attorney fees here. To begin, it is undisputed that Dassault is the "prevailing party" in this action, and, as such, the Court may award Dassault fees under the Copyright Act. *See, e.g., Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 362 (6th Cir. 2007) (explaining that "[i]n copyright infringement cases, generally, the prevailing party is one who succeeds on a significant issue in the litigation that achieves some of the

8

benefits the party sought in bringing suit") (cleaned up).  As explained above, the jury at the March 2024 re-trial found in favor of Dassault on both of its claims of copyright infringement, and the jury further found that Childress had not established any of his defenses to those claims. (*See* Verdict Form, ECF No. 667, PageID.25044-25046.)  Dassault also prevailed over Childress on, among other things, its trademark infringement claim and on Childress' counterclaim for abuse of process. (*See id.*, PageID.25046-25049; Order, ECF No. 718.)  Dassault is therefore the prevailing party in this case, and, as such, the Court may award it fees under the Copyright Act.

Under the totality of the circumstances, and considering the non-exclusive factors described above, the Court concludes that a substantial fee award is warranted here for several reasons.  Most importantly, the jury at the March 2024 re-trial found that Childress willfully infringed Dassault's copyright in the CATIA software.  That finding of willfulness "is an important factor favoring an award of fees." *Hist. Rsch. v. Cabral*, 80 F.3d 377, 379 (9th Cir. 1996).  Indeed, courts have repeatedly found that where a party "deliberately refused to comply with copyright laws," the injured party "should be awarded attorney's fees" under the Copyright Act. *Harrison Music Corp. v. Tesfaye*, 293 F.Supp.2d 80, 84 (D.D.C. 2003) (awarding attorney fees where party "made a willful and knowing decision" to violate the plaintiff's copyright"). *See also Kepner-Tregoe, Inc. v. Vroom*, 183 F.3d 283, 288 (2d Cir. 1999) ("The court's award of attorney fees under the Copyright

9

Act, 17 U.S.C. § 505, is also justified based on the court's finding of willfulness"); *Deyoung v. Wear*, 20-CV-549, 2021 WL 5496386, at * 10 (W.D. Mich. Mar. 29, 2021) ("The Court concludes an award of attorney fees and costs in this case is appropriate because of Defendants' willfulness").

The Court further concludes that an award of fees here is supported by the statutory purposes of the Copyright Act. These purposes include both deterring willful infringement and incentivizing copyright holders to prosecute meritorious copyright claims. As the United States District Court for the Southern District of New York has explained:

> [A]s to the goal of deterrence, a fee award to plaintiffs here may encourage copyright holders whose rights are infringed to vindicate meritorious claims. Contested copyright cases can be expensive to litigate, as this case illustrates. Without the prospect of a fee award, plaintiffs facing mounting legal fees "'might be forced into a nuisance settlement or deterred altogether from enforcing [their] rights.'" *Crown Awards, Inc. v. Disc. Trophy & Co.,* 564 F.Supp.2d 290, 296 (S.D.N.Y. 2008), *aff'd,* 326 F. App'x 575 (2d Cir. 2009) (summary order) (quoting *Assessment Techs. of WI, LLC v. WIREdata, Inc.,* 361 F.3d 434, 437 (7th Cir. 2004)). Awarding such fees incents rather than deters potential plaintiffs: It serves to "satisfy the Copyright Act's purposes" because it will "encourage plaintiffs to litigate meritorious claims of copyright infringement" and, in turn, "encourage the origination of creative works by attaching enforceable rights to them." *Id.* at 295 (citations omitted).

*Beastie Boys v. Monster Energy Co.*, 112 F.Supp.3d 31, 45 (S.D.N.Y. 2015).[2] Here, as explained above, in order to defend its copyright, Dassault has had to engage in a protracted, more-than-a-decade long battle with Childress. If a copyright holder like Dassault did not have the ability to reclaim the attorney fees it spent pursuing those claims, it may have abandoned them or never tried to enforce those rights in the first place. That would defeat the purpose of the Copyright Act.

Finally, while many of the legal positions taken by Childress throughout this case were reasonable, at least one was not and needlessly extended this action and increased the amount of attorney fees expended by Dassault. Childress repeatedly filed motions and forced Dassault to spend time and money responding to arguments related to Childress' contention that Dassault violated Federal Rule of Criminal Procedure 6(e)'s "grand jury secrecy" provision. The questionable merit of that legal position further justifies an award of fees here.

For all of these reasons, the Court concludes that Dassault is entitled to an award of attorney fees under the Copyright Act.

---

[2] *See also Kepner-Tregoe*, 183 F.3d at 288 (explaining that an award of attorney fees "is in line with the statutory goal[s] of deterrence" found in the Copyright Act); *Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 383 (7th Cir. 1988)) (concluding that "[w]hen, as here, the violation is willful, deterrence of future violations is a legitimate consideration," and explaining that "courts have repeatedly emphasized that defendants must not be able to sneer in the face of copyright owners and copyright laws. Rather, defendants must be put on notice that it costs less to obey the copyright laws than to violate them") (cleaned up).

## C

Childress counters that an award of fees is not justified in this case.  As noted above, his primary argument is that such an award is barred by the "law of the case" doctrine. (Resp., ECF No. 700, PageID.26245.)  Childress' argument proceeds as follows.  He notes that the district judge presiding over the first trial in this case denied Dassault's motion for attorney fees.  He then insists that "[n]othing of substance has changed" since Dassault lost that motion and that, accordingly, "Dassault's attempt to get a different ruling from this Court should be rejected out of hand." (*Id.*)  The Court disagrees.

Contrary to Childress' argument, the posture of this case *has* changed *significantly* since the prior judge denied Dassault's motion for attorney fees.  While the jury at the first trial declined to find that Childress had infringed Dassault's copyright willfully, the jury at the March 2024 re-trial did make such a finding.  And for all of the reasons explained above, that finding of willfulness weighs strongly in favor of an award of attorney fees here.  Simply put, the jury's finding of willfulness materially changed the posture of this case, and that finding justifies reaching a different conclusion on Dassault's current motion.

Childress further argues that an award of attorney fees here is not warranted because Dassault had "a number of attorneys who have worked on the case" even though, for a majority of the time that this case has been litigated, Dassault was

12

fighting "against an adversary who was unrepresented by counsel." (*Id.*, PageID.26252.)  But Childress is no ordinary *pro se* litigant.  To his great credit, even though he fought much of this case against Dassault without the assistance of retained counsel, he presented his arguments with a professionalism and skill that rivaled (and in some cases, exceeded) many of the licensed attorneys who come before the Court.  Thus, while the Court did not always agree with Childress' legal positions, the manner and skill in which he presented his arguments did require Dassault to mount an equally thoughtful and detailed response to his arguments.  Moreover, Childress made myriad filings with the Court as the litigation progressed – including the filing of many motions for reconsideration – and the volume of filings by Childress justified Dassault's use of more than one attorney.

## III

### A

Having concluded that Dassault is entitled to an award of reasonable attorney fees, the Court must now determine the amount of that fee award.  "A reasonable fee is one that is adequate to attract competent counsel, but does not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (cleaned up; internal citations omitted).  "[T]he lodestar method yields a fee that is presumptively sufficient to achieve this objective." *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 615 (6th Cir. 2021) (quoting *Perdue v. Kenny A.*, 559 U.S. 542,

13

552 (2010)). "To calculate the lodestar, the court first determines counsel's reasonable hourly rate(s) and the number of hours that counsel reasonably expended on the case …. Multiplying reasonable rates times reasonable hours yields the lodestar." *Id.* (internal quotation marks and citation omitted). "That amount can then be adjusted based on" several factors, including "(1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly" and "the experience, reputation, and ability of the attorneys." *Reed*, 179 F.3d at 471-72 n.3.

When determining a fee award, "district courts are not required to act as 'green-eyeshade accountants' and 'achieve auditing perfection' but instead must simply to do 'rough justice.'" *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir. 2016) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). "This means that [a district] court can rely on estimates based on its 'overall sense of a suit.'" *Id.* (quoting *Fox*, 563 U.S. at 838). In other words, a court need not "cull through the records and conduct an atomized line-item review." *Id.* at 713 n.11. *See also Howe v. City of Akron*, 705 F. App'x 376, 382-83 (6th Cir. 2017) (explaining that district court need not "parse" legal bills or conduct "a complete audit" of those bills when assigning a fee award).

14

**B**

Here, Dassault has asked for an attorney fee award of $2,401,833.54.  It has supported that request with a detailed declaration from its lead counsel, Glenn Forbis, and redacted copies of its billing records. (*See* ECF No. 674-2.)  Dassault's fee request includes legal fees that it incurred during two time periods: (1) February 12, 2009, the date it filed this action, through December 21, 2009, when it filed its motion for default judgment against Childress and (2) May 13, 2013, through the end of the March 2024 re-trial in this case.  Dassault has not asked for any fees during the period between December 21, 2009, and May 12, 2013, because a summary of those fees and the associated legal bills are not available to Dassault. (*See* Forbis Decl. at ¶ 5, ECF No. 674-2, PageID.25113.)

During the relevant time frames, Dassault has been represented primarily by three attorneys in this action: Forbis, James Bradley Luchsinger, and Jeremiah John Foley. (*See id.* at ¶ 6, PageID.25113.)  In Forbis' declaration, he explains in detail the hourly rates charged by each attorney during the relevant time periods and how those hourly rates are justified based on each attorney's educational background and professional experience. (*See, e.g.*, *id.* at ¶¶ 8-20, PageID.25113-25116.)  Forbis also summarizes the legal work conducted in each redacted legal bill Dassault seeks payment for, and the total number of hours of work associated with each bill. (*See id.* at ¶¶ 22-96, PageID.25117-25132.)

15

**C**

As explained above, Childress has not lodged any specific objections to the amount of Dassault's attorney fee request.  For instance, he has not quibbled with the description of legal services provided by Dassault's lead attorney nor challenged the reasonableness of the hourly rates charged by Dassault's attorneys.  Nor has he presented any developed arguments as to why the total fees requested by Dassault are unreasonable.  And he has backed away from his initial demand to review the billing entries on the invoices from Dassault's attorneys and for an evidentiary hearing.  He has, arguably, waived most, if not all, of his challenge to the amount of fees sought by Dassault.

**D**

The Court has nonetheless carefully reviewed Dassault's motion and its supporting documents.  It concludes that Dassault is entitled to a substantial portion of the fees that it has requested.

The Court first considers the number of hours that Dassault has spent prosecuting this case and defending against Childress' counterclaims.  As the Court described above, this case has been pending for over fifteen years.  It has spanned three district judges, two jury trials, multiple appeals, voluminous discovery, and intensive motion practice.  And Childress has been a worthy and litigious adversary.  Under these circumstances, Dassault's attorneys reasonably worked a very large

16

number of hours.  The Court concludes that the total number of hours worked by those lawyers reasonably corresponds to the myriad tasks they performed over the lengthy course of this litigation and that those tasks were reasonably necessary.

Next, the Court concludes that the hourly rates requested by Dassault are also reasonable.  For all of the reasons explained by Forbis in his sworn declaration, based on the legal experience and professional experience of Dassault's three primary attorneys, and considering the market rate for attorneys in the Detroit market with that experience, the fees charged by Dassault's lawyers are fair and appropriate.

Even though the number of hours worked by Dassault's lawyers and the rates they charged were reasonable, the Court declines to award the full amount of fees that Dassault requested.  The Court believes that some reduction of those fees is warranted based upon the degree of success achieved by Dassault. *See, e.g.*, *Freed v. Thomas*, 137 F.4th 552, 555-57 (6th Cir. 2025) (explaining that after determining the lodestar figure, a district court may "adjust the initial fee award based on several factors, the 'most critical' of which is 'the degree of success obtained'") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434-36 (1983)).  While the ultimate result of the March 2024 re-trial and post-trial motions were favorable to Dassault, there were discrete portions of these proceedings in which Dassault did not achieve favorable results.  Most significantly, Dassault did not prevail in the 2020 appeal to the Sixth Circuit – in which that court vacated the jury verdict in favor of Dassault.  Likewise,

17

Dassault sought, but did not obtain, damages for Childress' trademark infringement, and that result further warrants at least some reduction in its claimed fees.  Finally, the Court believes that some reduction is warranted to bring the fee award closer in line to the amount of damages awarded to Dassault for copyright infringement.

For these reasons, the Court will apply a 25-percent discount to the requested fee award.  The Court believes that this discount fairly accounts for Dassault's overall degree of success while also furthering the purposes of fee awards in copyright litigation.  Simply put, a 25-percent discount achieves "rough justice." *Husted*, 831 F.3d at 703.  The Court therefore awards Dassault attorney fees in the amount of **$1,801,375.15**.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
Dated:  March 16, 2026                    UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 16, 2026, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126